Argued October 5, accused reprimanded December 8, 1965

IN RE COMPLAINT AS TO THE CONDUCT OF
PETER A. SCHWABE, SR., ACCUSED
408 P. 2d 922

*Thomas H. Tongue,* Portland, argued the cause for accused. With him on the briefs were E. F. Bernard and Peter A. Schwabe, Jr., Portland.

*Gordon Moore,* Portland, argued the cause for Oregon State Bar. With him on the brief was Dale Jacobs, Oregon City.

Before McALLISTER, Chief Justice, and PERRY, SLOAN, GOODWIN, DENECKE and SCHWAB, Justices.

PER CURIAM.

The accused member of the bar was charged by the Oregon State Bar with misleading Joseph Herink, a layman not represented by an attorney as to his legal rights in a controversy in which Mr. Schwabe represented clients whose interests were adverse to Mr. Herink. We find for Mr. Schwabe on this charge.

The accused was also charged with communicating with Mr. Herink after Mr. Herink had allegedly retained an attorney and with "intermeddling" in this attorney-client relationship.

Rule 11 of the Rules of Professional Conduct was allegedly violated by the accused. It provides:

> "A member of the state bar shall not communicate with a party represented by counsel upon a subject of controversy in the absence and without the consent of such counsel. * * *."

The facts giving rise to this complaint against the accused commenced with the death of Edgar J. Nausa,

Mr. Herink's uncle, in 1957. Nausa's will provided that his estate was to be left in trust with the income to Ada Taylor for her life and upon her death, the corpus to two nieces of the decedent. Mr. Herink, represented by counsel, contested the will. The contest was settled by the payment of $1,500 to Herink. After the settlement a final order of distribution was entered in Nausa's estate proceedings directing that the estate be distributed to the trustee in trust for Ada Taylor and thereafter to the two nieces.

After Ada Taylor's death the trustee refused to pay the corpus to the nieces upon the ground that the nieces were Czechoslovakians and the law of Czechoslovakia prevented United States citizens from inheriting from Czechoslovakians; therefore, they could not inherit from United States citizens. The petitioner, upon behalf of the nieces, filed suit against the trustee seeking to compel him to distribute to the nieces. The complaint sought relief upon the ground that the order of distribution in the estate was conclusive. The court ordered the State Land Board and Herink to be made parties. The Land Board was made a party because it receives the property for the state in the event of escheat.

On February sixteenth, about a week after the order requiring the joinder of Herink as a party, the petitioner went to visit him. This was their first meeting. Petitioner stated his purpose in visiting Herink was to obtain an affidavit from him that he was a nephew of Nausa because proof of this fact would oust the State Land Board as the estate would not escheat if there were an eligible heir living in the United States.

Herink made such an affidavit. Petitioner believed it would be well if he could secure an assignment by

Herink to the nieces of any interest Herink might have in the matter. Herink did make such an assignment on February twenty-eighth. This called for monthly payments to Herink. Sometimes these were delivered personally by petitioner.

The complaint was amended and this assignment was pleaded as a further ground for relief. Petitioner asked Herink to testify in the trial against the trustee, but Herink said he was too ill to come to court; so the judge went to Herink's lodgings on July nineteenth and heard his testimony.

All during this period Herink was not represented by an attorney. He had filed no appearance in the litigation. When petitioner wrote him about the assignment, he suggested Herink should get an attorney, but he did not.

The morning after Herink testified, July twentieth, the attorney for the Land Board went to talk to Herink. Later that day this attorney stated this to the court and that Herink had asked him to secure an extension so he, Herink, could secure an attorney. The motion was denied. The matter engendered a heated exchange between the attorney for the Land Board and petitioner.

After court adjourned on this day, petitioner went to Herink's lodgings and told him of the other attorney's statement. According to petitioner, Herink denied wanting an attorney and said he told this attorney he wanted nothing further to do with him. Petitioner thereafter on the same day prepared an order of default against Herink and had the court sign the order the same day.

Meanwhile, also on the twentieth, the Land Board attorney brought another attorney, Mr. St. Martin, to

see Mr. Herink. They talked and Mr. St. Martin visited Mr. Herink two or three more times that week. On July twenty-fifth Mr. Herink signed a fee contract with Mr. St. Martin.

On Friday, July twenty-seventh, petitioner received a letter from Mr. St. Martin advising that he represented Mr. Herink. Petitioner testified that he "just couldn't believe it" in view of Mr. Herink's past statements to petitioner. The next day, Saturday, the twenty-eighth, petitioner stated he tried to call Mr. St. Martin and was unsuccessful. He then went to see Mr. Herink and to find out about this. Petitioner testified that Herink said he did not know any St. Martin and that he did not hire any lawyer. Petitioner saw a copy of a fee agreement with Mr. St. Martin and he asked Herink if he signed it. Petitioner testified that Herink said he had not, although the Land Board attorney and "the fellow he brought down" wanted him to.

Petitioner had Herink write on the letter from Mr. St. Martin to petitioner, "This letter is not true," and that Herink did not employ Mr. St. Martin or sign the fee agreement.

On the same date petitioner wrote a handwritten note to Mr. St. Martin as follows:

"Dear Joe—Would urgently recommend that you phone me the first thing next Monday morning. (CA 3-7328), also that you proceed with utmost caution on that *Joseph Herink* thing. He has sworn under oath that he did not employ you or sign that attorney's fee agreement.

"Please accept this as the friendly gesture that it is intended to be. * * *"

Mr. St. Martin did not call and on Tuesday, July thirty-first, petitioner again went to see Mr. Herink.

He was busy and petitioner came back on Wednesday. Petitioner testified Mr. Herink repeated what he had previously told petitioner to the effect that he did not retain an attorney or sign an agreement.

Mr. Herink later told Mr. St. Martin to proceed with the case, and on August eighth Mr. St. Martin, on Mr. Herink's behalf, filed a motion to set aside the default. An extensive hearing was held at which Mr. Herink testified. The default was set aside. In November the court found Mr. Herink incompetent and appointed a guardian ad litem. The case was tried upon its merits and judgment entered for plaintiff against all defendants. Herink appealed to this court. A settlement, with Herink receiving a substantial amount, was made before the case was heard upon appeal.

The Trial Committee and the Board of Governors found petitioner had violated Rule 11, above quoted, by communicating with Mr. Herink after he was represented by counsel.

■ Petitioner admits he contacted Mr. Herink after he had in fact retained Mr. St. Martin. The Rules of Ethics only prohibit direct communications with parties represented by counsel if they are communications "upon a subject of controversy." Petitioner claims he did not communicate with Herink "upon a subject of controversy" in that nothing was said about the nieces and Herink's claim to the estate. We do not so narrowly construe the rule. The immediate subject of controversy in the dispute was whether Herink was represented by Mr. St. Martin.

"The 'wise and beneficent' aim of the Canon [our Rule 11] has been said to be to 'preserve the proper functioning of the legal profession as well as to shield the adverse party from improper ap-

proaches.' \* \* \*." Drinker, Legal Ethics, 202 (1953).

It seems obvious to us that direct communication with a party should be shunned when the purpose is to question whether the party is actually represented by counsel, as such counsel has informed opposing counsel.

■ Petitioner attempts to justify his conduct upon the basis of some cautious exploratory language in Opinion No. 9 of the Opinions of the Oregon State Bar Committee on Legal Ethics. That language is that an unusual circumstance which might authorize direct communication with a party represented by counsel is that such counsel "has himself been guilty of such misconduct as to justify direct communication." Assuming that this stated exception to the general prohibition has some merit, it is not applicable here. Mr. St. Martin does not appear to have been guilty of any misconduct. Petitioner intimates that the Land Board's attorney acted unethically in bringing Mr. St. Martin to Mr. Herink. It does not appear to us in this light, but more important, it was Mr. St. Martin who informed the petitioner that he represented Herink, not the Land Board attorney.

■ We find the bar's charge that the petitioner violated Rule 11 is well founded.

■ The petitioner's conduct is not dishonest or a breach of trust to his client. On the other hand, petitioner is a very experienced practitioner, who, we feel certain, "knew better." We ascribe his conduct to overzealousness in serving his client's interest and personal animosity toward the Land Board attorney. It is immaterial whether this latter was justified or not.

Neither a client's interests nor an opponent's conduct justify unethical conduct.

The petitioner is publicly reprimanded for his conduct and this opinion serves as such reprimand. Costs are awarded to the Oregon State Bar.