Argued and submitted June 3, accused reprimanded July 23, 1980

# In re Complaint as to the Conduct of
## DONALD E. HUFFMAN,
### *Accused.*

(OSB 78-54, SC 26821)

614 P2d 586

Burton J. Fallgren, Portland, argued the cause for the accused. With him on the briefs was Donald E. Huffman, of Huffman and Barnes, Portland.

John Henry Hingson, III, Oregon City, argued the cause for the Oregon State Bar. With him on the brief was R. W. Kitson, Mulino.

PER CURIAM.

## PER CURIAM.

■        This is a disciplinary action involving a member of the Oregon State Bar, Donald E. Huffman. The Trial Board found Huffman not guilty. The Disciplinary Review Board found him guilty and recommended a public reprimand. We review de novo. ORS 9.480, ORS 9.535.

The charges arose subsequent to a bitter marriage dissolution battle between Huffman's client and her then husband. Huffman's representation of a divorce client, Mrs. Diamond, began on December 3, 1974. At a conference, Huffman and Mrs. Diamond discussed the securing of his fee through taking a security interest in real property. On December 23, 1974, to secure Huffman's fee, Mrs. Diamond executed an assignment of her vendee's interest in a land sales contract which she owned by the entirety with her husband, the respondent in the dissolution proceeding. On December 26, 1974, the assignment was recorded, and on the same date the petition for dissolution was filed.

At the trial on August 1, 1975, Mrs. Diamond did not testify about her assignment to Huffman even though she was questioned by him about the value of the property and encumbrances thereon. Huffman, likewise, said nothing about the assignment to the trial judge. He told the Trial Board that at the time of trial he had no recollection of the security agreement. He testified that he did not remember the security agreement at that time because it was not contained in the client file, where it would be seen, but rather in an accounts receivable file.

The trial judge, at the conclusion of the dissolution case, awarded the subject real property to the husband, "free and clear of any interest of the petitioner [wife]." The husband, being generally unsatisfied with the result, appealed to the Court of Appeals, which affirmed.

The Oregon State Bar alleges that the failure to disclose the security agreement to the court violated Disciplinary Rules 7-102(A)(3), 7-102(A)(7), 1-102(A)(4) and 1-102(A)(6).[1] These rules provide:

"DR 7-102 Representing a Client Within the Bounds of the Law.

"(A) In his representation of a client, a lawyer shall not:

"\* \* \* \* \*.

"(3) Conceal or knowingly fail to disclose that which he is required by law to reveal.

"\* \* \* \* \*.

"(7) Counsel or assist his client in conduct that the lawyer knows to be illegal or fraudulent."

"DR 1-102 A lawyer shall not:

"\* \* \* \* \*.

"(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

"\* \* \* \* \*."

"(6) Engage in any other conduct that adversely reflects on his fitness to practice law."

The Trial Board concluded:

"The Accused's testimony was credible and worthy of belief and is accepted by the Board that he, in fact, forgot the existance [sic] of the Assignment document. \* \* \*."

The Review Board, to the contrary, found that "[n]o credence can be given to the Accused's testimony to the effect that he forgot about the assignment."

We are faced with directly contradictory findings from the Trial and Review Boards on this issue. The Review Board apparently considered Huffman's explanation not credible primarily because they found it inconceivable that he would have represented Mrs. Diamond in all of the pretrial matters, at trial, and a later appeal to the Court of Appeals, all without

---

[1] A further charge against Huffman is unsupported in the record and we therefore do not discuss it.

regard to or concern for the source of his compensation, especially when the fee had been his "first concern at the outset of his employment."

The Trial Board, on the other hand, had the benefit of hearing the testimony of the accused. Neither the Review Board nor this court has had this advantage. *In re Moynihan,* 166 Or 200, 221, 111 P2d 96 (1941). Huffman testified that he forgot about the assignment and that as the case got messier and messier, his expectation of compensation virtually disappeared. He did, however, request that attorney fees be awarded against the husband in the trial court and on appeal.

■    The Bar has not proved, by clear and convincing evidence, that the accused knowingly failed to disclose to the trial court his interest in property involved in the dissolution proceeding. We accordingly find Huffman not guilty of this charge.

The Bar's second charge is that Huffman refused to release his security interest in the property awarded to his client's former husband unless he received the attorney fees owed him by his client. This is alleged to be violative of Disciplinary Rules 1-102(A)(5) and 1-102(A)(6):

"DR 1-102 Misconduct.

"(A)    A lawyer shall not:

"* * * * *.

"(5)    Engage in conduct that is prejudicial to the administration of justice.

"(6)    Engage in any other conduct that adversely reflects on his fitness to practice law."

On April 17, 1978, long after the trial and appeal, Mr. Diamond, to whom the property was awarded by the trial judge, decided to build a home on the property. In connection with mortgage financing, a title company became involved. Huffman testified that he received a telephone call from the title company, as follows:

"* * * But at any rate, I did get a phone call, and I was quite perplexed at the time because then when they did tell me that I had a security interest, then I thought that they were referring to the wrong property. Then they said that that was the property and I said, 'Are you sure that I'm to be paid?' And she said, 'Yes, you are to be paid.' And I was a little bit perplexed. I recall asking her if they had been reconciled and she said she didn't know. But she said that if I would sign it and send it back, I would be paid. It sounded great."

The title company sent Huffman a form of release in which he agreed to release his interest in the property on payment of his fee. Shortly after Huffman returned the release to the title company, he received a call from the attorney for Mr. Diamond, Richard Stinson. Stinson said that Huffman was not entitled to be paid his fees from that property, and requested that Huffman release his security interest forthwith. On May 3, 1978, Stinson wrote Huffman to the same effect and enclosed a quitclaim deed for Huffman to sign. Stinson's letter contained this paragraph:

"Mr. Diamond was awarded the lot of which you hold a vendee's assignment of Mrs. Diamond's interest. Mr. Diamond is presently building on the lot but has had to suspend such, at a small, so far, financial loss since he cannot secure financing based on your assignment."

Huffman requested Stinson to "send me some kind of authority on why I should release it," and Stinson agreed to do so. Thereafter, the lawyers exchanged several phone calls, but Huffman did not execute the quitclaim deed and Stinson did not provide the authority requested. Huffman then turned the matter over to his partner.

In a deposition of Huffman taken two months before the Trial Board hearing, Huffman stated that he knew at the time of Stinson's first call that he was not entitled to the security interest in Mr. Diamond's property.

"Q   Was it your opinion at the time of your conversation with Mr. Stinson, that you had a right to continue to maintain your security interest on this property until such time as you had been paid before giving any release of that encumberance [sic]?

"A   As soon as I found out that Mr. Diamond did not agree to pay, I knew that I was not entitled to the money.

"* * * * *.

"Q   * * * When did you first realize that you were not in any legal position to enforce the security agreement againt Mr. Diamond?

"A   I'd say probably with the first phone call from Mr. Stinson stating what the position of his client was, and it wasn't what I was led to believe it was. I realized then, of course, that I wasn't entitled to the money from him. And I wasn't entitled to the security interest of the property.

"Q   Which would mean that the document which was of record was then just merely a—clouding the title to the property, right?

"A   I suppose that it would."

Nevertheless, Huffman refused to sign the release for a period of six months after he was requested to do so. The Review Board stated:

"The Disciplinary Review Board is of the opinion that the Accused's failure to execute a release of his assignment upon being requested to do so by Mr. Diamond's counsel constituted a violation of professional ethics in that it was not based on any right or privilege afforded him. It impeded justice. It harassed Mr. Diamond and it actually caused him substantial monetary damage."

The Bar's complaint alleged that Huffman refused to release "without payment of the * * * fees owed him by [Mrs. Diamond] * * *." Huffman admits that he refused to sign the quitclaim deed that Stinson sent to him. He contends that his refusal arose from Stinson's failure to send him "authority," and not

because of the nonpayment of his fee. We are unpersuaded by this argument. The record is clear that Huffman, in his dealings with the title company, agreed to release his security interest only *after* he received payment of his fee. Further, Huffman told Stinson in the initial phone call that he "thought [he] was going to be paid" by the title insurance company and requested authority from Stinson as to why he should release his interest. Stinson's testimony was that "[t]he gist of all the phone calls that I had from Mr. Huffman was that there was no way I was going to get a signed deed unless he got $1900." And most importantly, Huffman himself testified, "I knew that I was not entitled to the money."

■ ■   We agree with the Disciplinary Review Board. Huffman's conduct in refusing to release his interest in the property amounted to the knowing advancement of a claim that was unwarranted (DR 7-102(A)(2)) and the assertion of a position when it was obvious that such action would serve merely to harass another (DR 7-102(A)(1)). Although Huffman was not charged with violating DR 7-102(A)(1) or (2)[2] his conduct adversely reflects on his fitness to practice law, DR 1-102(A)(6).

However, there is no record of a course of such conduct. To the contrary, Huffman testified that he had never before been accused of similar conduct. There was also evidence that a judge familiar with his reputation for truth and veracity had never heard anything negative about Huffman in that regard. Because the conduct here was an isolated occurrence, arising out of a bitter divorce dispute, we conclude that a public reprimand is sufficient to indicate to the Bar of this state and to the public the seriousness with which we regard this breach of professional responsibility.

---

[2] We suggest that Bar counsel strive to charge accused attorneys as specifically as possible, under the facts known to them at the time the complaint is filed.

Huffman's conduct in refusing to release his security interest violated his ethical obligation as a member of the Bar of the state. This opinion will serve as a public reprimand for his misconduct.

Reprimanded. Costs to the Oregon State Bar.