Submitted on record July 21, accused suspended October 6, 1981

## In Re:
## Complaint as to the conduct of
## CARL W. HOPP, JR.
### *Accused.*
## (OSB 79-46, [TF] SC 27879)

634 P2d 238

Lyman C. Johnson, Bend, for the accused.

Carl M. Dutli, Prineville, for the Oregon State Bar.

PER CURIAM

Lent and Campbell, JJ., did not participate in this decision

## PER CURIAM.

The accused in this disciplinary proceeding is charged with conduct which violates the Code of Professional Responsibility in several respects. The underlying events are stipulated to. The intent with which the accused acted is disputed. The trial board and the disciplinary review board found that the accused's conduct violated Disciplinary Rule 7-102(A)(1). They recommended that the accused be required to pay $100 and out-of-pocket costs to the injured party and that he be reprimanded.

The accused's client's automobile was towed and stored by a business firm known as B & B Auto Wrecking, owned by a Mr. Borden. In preparing to file an action for the return of the automobile, the accused learned that Borden's assumed business name registration had expired and had not been renewed. At the accused's direction, one of his secretaries registered the assumed business name in her name. His purpose was to acquire what he called "leverage" for a favorable disposition of the lawsuit. It was done in the name of his secretary so his interest in the registration would not be apparent.[1] As it happened, the lawsuit was filed and settled and the proceeds distributed without reference to the change in registration.

A month later, the accused wrote to Mr. Borden as follows:
"Re:   B & B Auto Wrecking Co.
       Assumed Business Name
Dear Mr. Borden:
Our client is registered with the State of Oregon Corporation Commissioner's office with the assumed business name B & B Auto Wrecking for Deschutes County *[sic]*. Demand is hereby made upon you to immediately cease and desist your operation of business under that assumed business name or we are prepared to take legal action."

Borden and his wife were greatly distressed and called the accused. He told them to call their lawyer. The Bordens' attorney secured the release of the registration by payment

---

[1] The accused testified that his use of the secretary's name rather than his own was not intended for concealment because people knew the registrant was employed by his law firm. We find the testimony not credible. We see no reason other than to shield his involvement, at least temporarily.

of $100 to the accused. The accused retained $40 as reimbursement of costs and $60 was divided among three of his clerical personnel.

The accused testified that he intended no harm to the Bordens. Rather, the only purpose of his letter was to require the Bordens' lawyer to "go through the hoops" under ORS chapter 648 to renew registration of the name for Mr. Borden. The accused was not financially motivated. The accused testified that he was motivated by personal animosity toward Borden's lawyer which had developed in the course of the litigation.

Disciplinary Rule 7-102(A)(1) provides:

"(A)  In his representation of a client, a lawyer shall not:
   (1)  File a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of his client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another."

By causing registration of the assumed business name in his secretary's name and demanding that Borden cease using the name, the accused asserted a position and took action which was intended merely to harass Borden's lawyer. The accused admitted that he had no other purpose, although he used words other than "harass." Moreover, the accused either knew or it was obvious to him that his conduct would cause anxiety to the Bordens. Thus, the rule is violated, unless it is an excuse that the accused was acting on his own behalf and not in the representation of a client.

■  Disciplinary Rule 7-102(A)(1) is intended to protect the public from harassment or malicious injury caused by abuse of legal procedures by lawyers. To further that purpose, the rule sets a standard of conduct by which lawyers must conduct their professional practice. The reference in the rule to "representation of a client" is not intended to grant a license to lawyers to abuse procedures for their own personal advantage. Rather, it is to specify that such conduct by a lawyer will not be excused simply because the lawyer's improper conduct was ostensibly in the service of a

client. A lawyer's professional access to the workings of the law is a public trust, not a vehicle for personal pranks.

We so held in *In re Huffman,* 289 Or 515, 614 P2d 586 (1980). There, a lawyer took an assignment of a client's real property interest to secure his fee, but the property was decreed to the other party. After the litigation was terminated, the lawyer refused to release his assignment to the other party unless his fee was paid. Finally, after six months, he released it. Even though the lawyer was acting solely for himself and not in a client's behalf, we held the conduct to have violated DR 7-102(A)(1).

Here, the fact that the litigation with Borden had been terminated and that the accused's misconduct was ostensibly in behalf of a client, but actually for petty reasons of personal animosity, makes his conduct all the more culpable. We find the accused guilty of violation of Disciplinary Rule 7-102(A)(1).

Disciplinary Rule 1-102(A)(4) provides:

"(A) A lawyer shall not:
  * * * * *
  (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

The accused's statement in his demand letter that "[o]ur client" had registered Borden's assumed business name was dishonest, deceitful and a misrepresentation. He testified that he regarded the secretary as his client only in the sense that she was the registrant. In fact, however, the accused was his own client and the secretary acted at his direction and in his interest. It is clear that any attorney-client relationship between them was a sham rationalized solely for the purpose of defending in these disciplinary proceedings. We find that the accused's conduct also violated DR 1-102(A).

The trial board and disciplinary review board found the accused did not violate DR 5-101(A) regarding professional employment affected by personal financial interest, and DR 5-103(A) regarding attorneys having proprietary interest in the subject of a client's litigation. The accused's financial or proprietary interest was incidental.

We also find that these two rules are not shown to have been violated.[2]

■     We turn to the question of what sanction is appropriate. The trial board and the disciplinary review board recommended that a letter of admonition be sent to the accused. Admonition is not an authorized sanction. ORS 9.480. The accused testified that he realized that his conduct was "dumb" and that he would not repeat it. His lawyer argued that it was merely "bad judgment" resulting from inexperience and overzealousness. Neither characterization is an excuse, but both are material as to sanction. Moreover, we have no reason to believe this act reflects a pattern of conduct rather than an isolated instance. On the other hand, the conduct of the accused is serious. All for a prank, the accused lied, he improperly caused anxiety to Mr. and Mrs. Borden, he indulged his personal animosity, and he engaged in conduct which tends to tarnish his own reputation and that of his profession.

The accused's violation did not arise from mistake, inadvertence or failure to appreciate that ethical considerations forbade his conduct. In such a case, a public reprimand might be sufficient to demonstrate the gravity of the misconduct and to protect the public from future similar acts by the accused or others. This is not such a case. Although this was seemingly a minor incident, it involved violation of principles which are fundamental to our profession. It involves dishonesty and vindication of personal resentment. Those who profess the law, profess honest and dispassionate resolution of conflicts. We conclude that conduct which offends these fundamental values of our profession warrants forceful discipline. Bearing in mind the accused's relative inexperience as a mitigating factor, we order that he be suspended from the practice of law for 60 days from the entry of mandate. The distress of the Bordens can be partially redressed by repayment of $100 and their expenses incurred as a result of the demand letter. We direct that such payment be made.

Accused suspended. Costs to the Oregon State Bar.

---

[2] The accused was not charged with violation of ORS 9.460(4) or (7) [or ORS 9.480(4) or] (5). In view of our disposition under the disciplinary rules, we need not spontaneously reach the statutory issues and we express no view as to them.