Argued and submitted August 29, accused suspended for 91 days and ordered to take and pass the Professional Responsibility Ethics Examination within one year
August 29, 1989

## In re Complaint as to the Conduct of

## FOSTER A. GLASS,
*Accused.*

## (OSB 86-49; SC S35775)

779 P2d 612

Foster A. Glass, Canyon City, argued the cause and filed the briefs *pro se* for the accused.

Susan K. Roedl, Lake Oswego, argued the cause for the Oregon State Bar. With her on the brief was Donald L. Williams, Assistant Disciplinary Counsel, Oregon State Bar, Lake Oswego.

PER CURIAM

## PER CURIAM

In this lawyer-discipline matter, the complaint against the accused lawyer alleges that he engaged in conduct involving misrepresentation (current DR 1-102(A)(3)), took action merely to harass or maliciously injure another (DR 7-102(A)(1)), and failed to cooperate with the Bar investigation (DR 1-103(C)). The Trial Panel found the accused guilty of the latter two charges, imposed a public reprimand and ordered that the accused take and pass the Professional Responsibility Examination within 180 days from the date of the decision. We review *de novo* upon the record. ORS 9.536(3).

## FINDINGS

The facts are without material dispute. We find: The accused is an Oregon lawyer. He hired John Pearce to do construction work on his residence. Pearce claimed that he was not paid all that he was owed by the accused. Pearce filed a construction lien, which he subsequently sought to foreclose in a suit in the name of John Pearce, dba Quicksilver Construction Company.

*Former* ORS 648.010 (1983) required registration of assumed business names. *Former* ORS 648.090 (1983) required allegations and proof of registration of an assumed business name in order for a registrant to maintain an action against another. Pearce had not registered the assumed business name as required by ORS 648.010 and ORS 648.090.

The accused's lawyer advised the accused that Pearce had not registered the assumed business name and that if the accused registered the name he could preempt Pearce from doing so and defeat Pearce's action. The lawyer sent the accused the necessary forms to register the assumed business name, which the accused completed and filed with the Corporation Commissioner.

The accused filed a motion for summary judgment, which the trial court granted. Pearce appealed, and the Court of Appeals reversed, *Pearce v. Glass,* 80 Or App 559, 723 P2d 1031 (1986), holding that there existed an issue of fact whether Pearce conducted business with the accused as an individual (in which case the ORS Chapter 648 filing requirements would not apply). A Court of Appeals judge thereafter

wrote to the Oregon State Bar questioning whether the conduct of the accused and his lawyer violated the disciplinary rules.

## DISCIPLINARY RULE VIOLATIONS

### DR 1-102(A)(3)

■ The Bar charged the accused with violating *former* DR 1-102(A)(4) (now DR 1-102(A)(3))[1] of the Code of Professional Responsibility, which states that

> "[i]t is professional misconduct for a lawyer to * * * [e]ngage in conduct involving dishonesty, fraud, deceit or misrepresentation."

The complaint alleged that "the accused never intended to engage in the construction * * * business as he stated on his * * * filing and never intended to do business under the assumed business name of Quicksilver Construction Company."

In 1983, *former* ORS 648.010 in part provided:

> "(1) No person or persons shall carry on, conduct or transact business in this state under any assumed name or under any designation, name or style, other than the real and true name of each person conducting the business or having an interest therein, * * * unless such assumed business name or designation, name or style has been registered with the Corporation Commissioner. * * *.
>
> "(2) The person or all the persons conducting the business or having an interest therein shall sign and cause to have filed a verified application for registration with the Corporation Commissioner. An application for registration shall set forth:
>
> "(a) The designation, name or style under which the business is to be conducted.
>
> "(b) The real and true name of each person conducting or intending to conduct the business, or having an interest therein, together with the street address of each such person."

In 1983, *former* ORS 648.090 provided:

---

[1] We will hereafter refer to the present version of the Disciplinary Rule because that rule is the same as its predecessor.

"No persons carrying on, conducting or transacting business in the manner described in ORS 648.010, or having any interest therein, are entitled to maintain any suit or action in any of the courts of this state without alleging and proving that they have registered the assumed business name as provided for in ORS 648.010 with respect to the county in which the person conducted the business giving rise to such suit or action."

The accused filed with the Corporation Commissioner a verified application that he was conducting or intended to conduct the business indicated.[2] This was a knowing misrepresentation to the Corporation Commissioner which resulted in the registration of an assumed business name. ORS 648.010(3)(1983).

The accused testified that, contrary to his statements on the registration form, he did not intend to conduct a construction business. He filed under the name of Quicksilver Construction Company only to defeat or eliminate Pearce's capacity to sue him. We find by clear and convincing evidence that the accused's verified statement to the Corporation Commissioner that he was conducting or intending to conduct a construction business was a misrepresentation under DR 1-102(A)(3).

*DR 7-102(A)(1)*

DR 7-102(A) provides in part:

"In the lawyer's representation of a client, a lawyer shall not:

"(1)   File a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of the lawyer's client when the lawyer knows or when it is obvious that such action would serve merely to harass or maliciously injure another."

We find by clear and convincing evidence that the

---

[2] The "verified" application is not in the record. The accused testified:

"Q   You looked at the application. Did you pay particular note of the fact that it required you to sign it and declare under the penalties of perjury that you had examined it?

"A   I'm sure I did do that.

"Q   And it is true to the best of your knowledge and belief?

"A   Uh-huh."

accused's actions in filing the assumed business name constituted harassment and caused delay.[3] This manipulation of the legal process was intended solely to avoid having to deal with the merits of his case. The accused testified that it was a "sharp practice" and that he would not do it again.

The accused, however, argues that because he was not representing a client the rule should not apply to him. In *In re Hopp,* 291 Or 697, 700-01, 634 P2d 238 (1981), we held that "[t]he reference in the rule to 'representation of a client' is not intended to grant a license to lawyers to abuse procedures for their own personal advantage." Such conduct by a lawyer is improper even though the conduct was not in the service of a client.

We reached the same conclusion in *In re Huffman,* 289 Or 515, 614 P2d 586 (1980). There, a lawyer refused to release an assignment of his client's interest in real property securing his fee, unless that fee was paid. The property, however, had been decreed to the other party. Six months after the decree the lawyer finally released the assignment. We held that the lawyer's conduct violated DR 7-102(A)(1), despite the fact that the lawyer was acting in his own behalf rather than a client's. 289 Or at 522.

*DR 1-103(C)*

■ The accused was also charged with violating DR 1-103(C), which provides:

"A lawyer who is the subject of a disciplinary investigation shall respond fully and truthfully to inquiries from and comply with reasonable requests of a tribunal or other authority empowered to investigate or act upon the conduct of lawyers, subject only to the exercise of any applicable right or privilege."

The Oregon State Bar General Counsel sent a letter

---

[3] Had the accused not filed a certificate preempting the business name "Quicksilver Construction Company," Pearce could have cured the standing defect by filing the proper certificate with the Corporation Commissioner. *See Uhlmann v. Kin Daw,* 97 Or 681, 695, 193 P 435 (1920) (under statutes substantially the same as *former* ORS 648.010 and 648.090, "failure to file the certificate affects only the qualification of the person to sue, and that upon filing the certificate the disqualification is removed, and a suit or action may be maintained on a contract made before * * * such filing.")

to the accused on March 28, 1986, advising him of the complaint and requesting a response. The letter specifically asked the accused to respond by April 18, 1986. He did not respond. The accused testified that he placed the letter on his desk and forgot about it. The case was referred to the Local Professional Responsibility Committee (LPRC) for investigation on May 1, 1986. The accused responded to the LPRC on June 25, 1986, well beyond the 21 days provided in Bar Rule 2.5.

After receiving the LPRC report, the State Professional Responsibility Board referred the matter to General Counsel for further investigation. General Counsel sent a second letter to the accused on November 5, 1986, asking him to respond to questions posed by General Counsel and to give his account of what occurred. The letter was also addressed to the accused's lawyer, asking him to respond within 30 days of the date of the letter as well. Although the accused did not respond, his lawyer did. The accused testified that he thought his lawyer's response had taken care of the matter. The record shows, however, that the letter specifically requested that *both* the accused and his lawyer respond.

General Counsel sent the accused a certified letter on December 10, 1986, asking him to respond by December 23, 1986. He responded in a letter dated December 26, 1986, received by the Bar on December 29, 1986.

The accused did not respond to the reasonable requests of the General Counsel.[4] The Bar's second letter clearly requested that both the accused and his lawyer respond. Although the accused finally responded to the third letter from the Bar, this response was sent after the deadline imposed by the Bar.

It is clear that the accused failed to comply with the Bar's reasonable requests. Accordingly, we find that the accused violated DR 1-103(C).[5]

---

[4] DR 1-103(C) requires a response "subject * * * to the exercise of any applicable right or privilege." The accused has advanced no defense based upon that exception.

[5] We have also considered the accused's constitutional claims. They lack merit.

## SANCTION TO BE IMPOSED

■ We have concluded that the accused violated disciplinary rules involving misrepresentation, taking action merely to harass or maliciously injure another, and failure to cooperate with the Bar investigation. We now must determine the appropriate sanction. In so doing, we recognize that the purpose of sanctions is not to penalize the accused, but rather to protect the public and the integrity of the legal profession. *Ex parte Finn,* 32 Or 519, 531, 52 P 756 (1898).

To assist us in determining the sanction, we refer to the Standards for Imposing Lawyer Sanctions approved by the American Bar Association in 1986 (ABA Standards). *In re Willer,* 303 Or 241, 250, 735 P2d 594 (1987). The ABA Standards call for a consideration of: (1) the ethical duty violated; (2) the lawyer's mental state; (3) the extent of the injury, actual or potential, caused by the lawyer's misconduct; and (4) the existence of aggravating or mitigating factors. ABA Standards 3.0.

1. Ethical Duties Violated. By his actions, the accused violated a duty to the public and to the profession. *See* ABA Standards 5. The accused failed to maintain the integrity of the Bar.

2. Mental State. With respect to the filing of the assumed business name, we conclude that the accused acted intentionally. The accused had a conscious and intentional objective to mislead the Corporation Commissioner and harass his opponent. He also acted intentionally to harass or cause delay by filing the assumed business name. He was cavalier in his treatment of the Bar's first request, and untimely in his response to other requests. Thus, at least two of the violations involved the most culpable mental state.

3. Injury. Section 7.2 of the ABA Standards provides: "Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system." In this case, we find that Mr. Pearce's ability to pursue his claim was in part frustrated by the accused's filing the assumed business name. Pearce's case was delayed, and he incurred expenses caused by the accused's conduct.

4. **Aggravation and Mitigation.** One aggravating factor exists in this case: Selfish motive. ABA Standards 9.22(b). As noted above, the accused registered the assumed business name for his own benefit, to defeat Pearce's capacity to sue. The accused had no intention of conducting a construction business. The facts disclose two mitigating factors. First, the accused acted upon advice given him by counsel. Second, the accused admits that his conduct was "sharp practice" and he would not do it again.[6]

We do not view a violation of DR 1-103(C) lightly. The lawyer discipline process has been criticized as being slow and cumbersome. DR 1-103(C) was promulgated in 1983 to insure that complaints are timely investigated and acted upon. The public will lack confidence in the process unless DR 1-103(C) is enforced. We intend that it be followed and that violations be sanctioned.

We order that the accused be suspended from the practice of law for 91 days.[7] We also order the accused to take and pass the Professional Responsibility Ethics Examination. This examination shall be successfully completed within one year. If the accused does not pass the examination within one year, he will be suspended beginning one year from the effective date of this decision, ORAP 11.03, until he passes the examination.

The Oregon State Bar is awarded its actual and necessary costs and disbursements. ORS 9.536(4).

---

[6] The accused testified that he was not familiar with the Disciplinary Rules or Rules of Procedure and that "it's hard to even get the rules." The Bar annually publishes a Membership Directory that includes the Code of Professional Responsibility and the Rules of Procedure. The accused testified that he had the directory in his office. In the 1986 issue — the Bar's letters to the accused were in 1986 — the Disciplinary Rules are at pages 52-61; the Rules of Procedure are at 62-74.

[7] In *In re Hopp*, 291 Or 697, 701, 634 P2d 238 (1981), the accused violated DR 7-102(A)(1) and DR 1-102(A)(3) by filing an assumed business name to harass an opponent "for petty reasons of personal animosity." A 60-day suspension was imposed. The accused's misconduct here is similar to that in *Hopp*, but is compounded by the violations of DR 1-103(C).