Submitted on brief March 20, reprimanded May 13, 1976

In re Complaint as to the Conduct of
JAMES F. McCAFFREY, *Accused.*

549 P2d 666

Submitted on brief of James F. McCaffrey pro se March 20, 1976.

No appearance for Oregon State Bar.

PER CURIAM.

## PER CURIAM.

The charges against the accused lawyer were summarized in the memorandum opinion of the Trial Board:

> "The accused, JAMES F. McCAFFREY, has been charged with essentially three acts of professional misconduct, two of which arise out of interrelated transactions. The crux of each of the three charges is, first, a failure to preserve the confidences and secrets of a client in violation of Disciplinary Rule 4-101 of the Code of Professional Responsibility [Code]; second, communicating with a party known to be represented by an attorney without the consent of that attorney in violation of Disciplinary Rule 7-104 of the Code; and, third a failure to represent a client competently and zealously, in violation of Disciplinary Rules 6-101 and 7-101 of the Code."

We find, as did the Trial Board and the Disciplinary Review Board, that the accused is not guilty of failing to represent his client competently and zealously.

The first charge relating to a failure to preserve the confidences of a client arose out of the accused's representation of Mr. Stykel. In 1968-1969 the accused represented him in the prosecution of a personal injury claim. In 1969 and 1970 the accused incorporated two business ventures for Mr. Stykel. The accused was on the Board of Directors of one corporation and served as its registered agent. The accused defended one of the corporations in an action in which general and punitive damages were sought. The plaintiff took Mr. Stykel's deposition to inquire into his business and financial affairs. The accused represented the corporations in several other lawsuits and did other legal work for them. In 1970 the accused represented Mr. and Mrs. Stykel in a proceeding in which Mrs. Stykel adopted Mr. Stykel's children by a former marriage.

The attorney-client relationship ended in February 1972 when the accused brought an action against his client for fees.

In 1973 the accused represented Mrs. Stykel and filed a petition for dissolution of her marriage. Mr. Stykel's attorney wrote the accused that Mr. Stykel was of the opinion that the accused's representation of his wife constituted a conflict of interest because of the accused's knowledge of confidential information he had received from Mr. Stykel. Mr. Stykel also protested to the bar. The accused told Mrs. Stykel that in view of her husband's attitude she should get another lawyer. She did not want to change, so the accused had his partner do most of the work. The accused, however, continued with some participation.

The disputes in the dissolution concerned support, the distribution of assets and assumption of liabilities. The parties settled their differences after trial had started. Both were of the opinion that the settlement was unfavorable to them.

Mr. Stykel testified he had told the accused of some improprieties in his personal life and, because of information he gave the accused as his lawyer, the accused knew Mr. Stykel had "tax problems." The "tax problems" apparently were that Mr. Stykel had not paid some taxes. The accused denied his client told him of any improprieties. He also testified he had "suspicions" his client had "tax problems," but he did not know any details. He referred his client to an accountant to handle his client's tax problems.

The Trial Board was of the opinion:

"Whether or not the accused in fact knew, or had available to him for the looking in his various office files on James L. Stykel and his corporate businesses, any confidential information about Mr. Stykel not known to Mrs. Stykel is not the critical issue. * * *."

It reasoned:

"* * * [T]he financial information about Mr. Stykel * * * which the accused obtained or may have obtained * * * could have proved relevant * * * and advantageous to Mrs. Stykel."

The Trial Board concluded the accused had violated

the Code because his conduct created "the appearance of impropriety."

■ We also find the accused violated the Code because his representation of Mrs. Stykel created the appearance that he was using the confidences gained from his representation of Mr. Stykel to Mr. Stykel's disadvantage.

The accused's representation of Mr. Stykel and Mr. Stykel's businesses caused the accused to become familiar with the financial affairs of his client. When an attorney with such information a year or so later undertakes to represent his former client's wife in a divorce suit against his former client, an appearance of a conflict of interest is necessarily created. It appears to the public as well as the former client that the attorney could be using information the attorney gained while representing his former client to the disadvantage of his former client. The appearance is obviated, of course, if the former client's consent is obtained.

We quoted from Wise, Legal Ethics 273 (2d ed 1970), in *In re Harry D. Boivin,* 271 Or 419, 533 P2d 171 at 174:

" '* * * If there is the slightest doubt as to whether or not the acceptance of professional employment will involve a conflict of interest between two clients or with a former client, or a conflict between the interests of any client and that of the attorney, or may require the use of information obtained through the service of another client, the employment should be refused.' "

With regard to the charge that the accused communicated directly with a party represented by an attorney, that act is admitted by the accused. His position is that he did so unknowingly.

Mr. and Mrs. Castro obtained a divorce. The accused was not involved. Mr. Castro lived in California and she in Oregon. The accused was representing her in a dispute over visitation. The accused knew Mr. Castro had represented himself in the divorce in June

[ 27 ]

1972. He had personally visited the accused in his office in connection with the visitation dispute. The accused, however, knew Mr. Castro later retained an attorney, as in May 1973 he wrote Mrs. Castro's California attorney to that effect. In November 1973 he made a direct communication to Mr. Castro by writing him a letter. The accused testified he would never have done so intentionally and we believe that is the fact. The record is that the accused was careless in making the direct communication. That is the conclusion the Trial Board reached.

The accused contends this court has held that isolated instances of negligence are not grounds for discipline. That is too broad a statement. In *In re Robert Neil Gygi,* 273 Or 443, 450, 541 P2d 1392 (1975), we held an attorney's negligence in preparing a corporate annual report was not sufficient to warrant disciplinary action. However, we contrasted *In re Marvin G. Hollingsworth,* 272 Or 319, 536 P2d 1244 (1975), in which we held that negligence in making court appearances and disbursing funds did warrant discipline.

██  A breach of the Code is a subject of disciplinary action if done negligently and if the breach is apt to cause the harm the Code sought to prevent. Rule 7-104(A)(1) prohibits communicating with a person who is represented by counsel. The purpose of the rule is to prevent a person from being deprived of the advice of retained counsel by bypassing retained counsel. It is immaterial whether the direct communication is an intentional or a negligent violation of the rule.

██  The Trial Board recommended that a public reprimand be administered the accused. The Disciplinary Review Board made the same recommendation. We also find that to be appropriate. This opinion will act as a public reprimand to the accused for representing Mrs. Stykel and for communicating directly with Mr. Castro at a time when he was represented by an attorney.