Submitted on petition and brief February 13, accused suspended April 3, 1984

# In re Complaint as to the Conduct of
## JAMES H. LEWELLING,
*Accused.*
### (OSB 82-8, SC S30014)
678 P2d 1229

Lawrence N. Brown, Salem, filed the petition for the accused.

Robert A. Ford, Eugene, filed the brief for Oregon State Bar.

PER CURIAM

## PER CURIAM

In this disciplinary proceeding the accused is charged with violation of DR 7-104(A)(1) which provides in relevant part:

"(A)    During the course of his representation of a client a lawyer shall not:

"(1)    Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so."

and with violation of DR 7-105(A) which provides:

"(A)    A lawyer shall not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter."

The accused and the Oregon State Bar stipulated to the facts. The accused represented Sharon Benner-Sahi as a defendant in a partition action instituted against her by plaintiff, Lola Daniels. Daniels was represented by an attorney in Coos Bay.

While the litigation was pending the accused encountered Daniels in the Lincoln County Courthouse. During the encounter the accused discussed a letter pertaining to the litigation.

Some three months later, while the litigation was still pending, the accused telephoned Daniels at her place of employment and advised her that if she did not immediately pay his client the sum of $300 which Daniels had allegedly received as rent money, he would advise his client to go to the grand jury. Daniels refused to pay the money and the accused contacted the District Attorney's office. The accused, though not subpoenaed, appeared before the grand jury. No criminal indictment was brought against Daniels.

The Trial Board found the accused in violation of the Disciplinary Rules set out above and recommended that the accused be administered a public reprimand. The Disciplinary Review Board concurred in the findings and conclusion of the Trial Board and also recommended a public reprimand. The

Bar now asks this court similarly to adopt the findings and conclusion of the Trial Board and to administer a public reprimand.

We first take note of the fact that the accused has been previously disciplined for professional misconduct due to an excessive use of alcohol. *In Re James H. Lewelling,* 244 Or 282, 417 P2d 1019 (1966). He was suspended from the practice of law for two years. However, execution was suspended for five years on the condition that the accused abstain from the use of alcoholic beverages and discontinue the delay and neglect that had characterized his professional conduct. The accused satisfied the conditions and was relieved of the sanction in 1971. The present conduct of the accused is not in any way related to the previous disciplinary proceeding.

We have on a number of occasions considered violations of DR 7-104(A)(1). *In Re Otto W. Heider,* 217 Or 134, 341 P2d 1107 (1959); *In Re Eugene C. Venn,* 235 Or 73, 383 P2d 774 (1963); *In Re Peter A. Schwabe, Sr.,* 242 Or 169, 408 P2d 922 (1965); *In Re McCaffrey,* 275 Or 23, 549 P2d 666 (1976). In all these cases we found the accuseds guilty regardless of the reasons given by the accuseds for their acts. The communication cannot be justified because there is a business relationship between the accused and the party contacted, *Heider,* 217 Or at 155, or because the communication occurs negligently rather than intentionally, *McCaffrey,* 275 Or at 28. Acting in ignorance of the ethical standards is no justification for the communication, *Venn,* 235 Or at 74; nor does a client's interest or an opponent's conduct justify communication with a person the lawyer knows to be represented, *Schwabe,* 242 Or at 176.

In this case the accused communicated with Daniels on two occasions. As to the encounter with Daniels in the courthouse, it is stipulated that the accused would have testified that he did not remember who initiated the conversation, and that during the conversation the accused advised Daniels to discuss the matter with her attorney. On the other hand, it is stipulated that Daniels would have testified that she was not advised to consult her attorney. As to the telephone call to Daniels the stipulated facts indicate that the accused's client, Benner-Sahi, "had been hounding [the accused] for some time, both at home and at the office," that

the accused became very disturbed when he learned that Daniels had collected the $300 in violation of a written rental agreement, and that "at the time he telephoned [Daniels] he was fed up to the neck with this case, was emotionally upset, and acted on sudden impulse." Had he "taken time to rationalize and think about the matter, he would never had *[sic]* made the call and on the contrary, would have either written or called her attorney." This amounts to an explanation of the accused's behavior but it is not a justification for his acts. We find the accused violated DR 7-104(A)(1).

With reference to the charge that the accused violated DR 7-105(A), the accused acknowledges in the stipulated facts that he did contact the District Attorney's office and did testify before the grand jury. He does not contend those *actions were on* "sudden impulse" and offers no explanation for those actions.

■ The purpose of DR 7-105(A) is expressed in Ethical Consideration 7-21:

> "The civil adjudicative process is primarily designed for the settlement of disputes between parties, while the criminal process is designed for the protection of society as a whole. Threatening to use, or using, the criminal process to coerce adjustment of private civil claims or controversies is a subversion of that process; further, the person against whom the criminal process is so misused may be deterred from asserting his legal rights and thus the usefulness of the civil process in settling private disputes is impaired. As in all cases of abuse of judicial process, the improper use of criminal process tends to diminish public confidence in our legal system." (Footnote omitted.)

The threat of criminal prosecution to enforce a claim is contrary to the accepted precepts of "fair play" and is clearly proscribed by DR 7-105(A). *In Re Jann W. Carpenter,* 250 Or 394, 396, 443 P2d 238 (1968). We find the accused violated DR 7-105(A).

In three of the cases cited above in which a lawyer communicated with a person he knew to be represented, we imposed a public reprimand. The exception is *Heider, supra,* which involved numerous other charges. In *Carpenter, supra,* the accused threatened persons with criminal prosecution unless bad checks they had written were made good, and we

imposed a public reprimand in spite of the fact the accused was also found guilty of using another's name without consent in the application for a notarial commission.

In the present case we are influenced by the positions of the Trial Board and the Disciplinary Review Board recommending a public reprimand. The Bar also suggests that is an appropriate sanction. Communicating with a person the lawyer knows to be represented does not involve dishonesty or a breach of trust and if that were the only charge here we would impose only a public reprimand. However, when a lawyer "* * * present[s], participate[s] in presenting, or threaten[s] to present criminal charges solely to obtain an advantage in a civil matter" we think the violation is of a more serious nature. It is an intimidating tactic that is an abuse of our legal processes. As Ethical Consideration 7-21 points out, "* * * the person against whom the criminal process is so misused may be deterred from asserting his legal rights and thus the usefulness of the civil process in settling private disputes is impaired." Our Disciplinary Rules have been promulgated, and are enforced through disciplinary procedures, for the protection of the public and the integrity in the administration of justice. We, therefore, conclude that violation of DR 7-105(A) merits more than a public reprimand. The accused is suspended for 60 days, beginning April 24, 1984. ORAP 11.03(4).

The Oregon State Bar is awarded its actual and necessary costs and disbursements. ORS 9.536(4).