729 P.2d 552 (1986)
302 Or. 256
EMERALD PEOPLE'S UTILITY DISTRICT, an Oregon Municipal Corporation, Petitioner On Review,
v.
PACIFIC POWER & LIGHT CO., an Oregon Corporation, Respondent On Review.
TC 83-1726; CA A30473; SC S32566.
Supreme Court of Oregon, In Banc.
Argued and Submitted September 4, 1986.
Decided November 25, 1986.
*553 John R. Faust, Jr., Portland, argued the cause for petitioner on review. With him on the petition were Donald A. Haagensen, James M. Finn, and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.
Charles F. Hinkle, Portland, argued the cause for respondent on review. With him on the response brief was Stoel, Rives, Boley, Fraser & Wyse, Portland.
Christopher M. Kittell, Tillamook, filed an amicus curiae brief on behalf of Tillamook People's Utility District, Central Lincoln People's Utility District, Northern Wasco People's Utility District, Clatskanie People's Utility District and Columbia River People's Utility District. With him on the brief were Sheldon H. Rich, The Dalles, for Northern Wasco People's Utility District; Mark A. Williams, Newport, for Central Lincoln People's Utility District; Robert A. Lucas, St. Helens, for Columbia River People's Utility District; and Ted Grove, Clatskanie, for Clatskanie People's Utility District.
PETERSON, Chief Justice.
Emerald People's Utility District (Emerald) filed this action under ORS 543.610 (1981) to take over the hydroelectric project of defendant Pacific Power & Light (PP & L). ORS 543.610 (1981) authorized the "state, or any municipality thereof * * * to take over" power-generating facilities at "net investment," a price which, in some cases, is more advantageous than the value generally required to be paid by a condemnor.[1]
The trial court dismissed Emerald's complaint, holding that a people's utility district (PUD) may not take over an existing facility under ORS 543.610 because it is not a "municipality" under the statute. In affirming that holding, the Court of Appeals discussed the interrelationship of two laws passed in 1931, and noted that PUDs lack express condemnation power to condemn a facility already devoted to public use under the constitution or its implementing legislation. Emerald PUD v. PP & L, 76 Or. App. 583, 711 P.2d 179 (1985). We, too, believe that the 1931 legislation should be considered as a package. Although we disagree with the Court of Appeals as to the power of PUDs to condemn existing privately owned facilities under ORS chapter 261, we agree with its conclusion concerning ORS 543.610. We therefore affirm the decision of the Court of Appeals, but not its statement as to eminent domain under ORS chapter 261.
Interest in PUDs in 1930 culminated in the submission by initiative and adoption of *554 what was known as the "Grange Amendment" in the 1930 general election. See Brown, People's Utility Districts in Oregon, 20 Or.L.Rev. 3, 3 n 1, 6-8 (1940) (discussion of history of amendment). The amendment was sponsored by the Oregon State Grange and was adopted by initiative as Article XI, section 12. The amendment sought to grant PUDs, as local governmental units, broad powers to, among other things, use the power of eminent domain and to "acquire, develop and otherwise provide for * * * water power and electric energy." PUDs were part of a broad movement in utility reform which included not only the Grange Amendment but also a bill introduced at the next legislative session at the request of Governor Julius Meier that created the Hydroelectric Commission and included comprehensive water power policy legislation. Or. Laws 1931, ch. 67, codified as amended at ORS ch. 543 (discussed post).
The problems with respect to private utilities at that time included
"[t]he financial scandals of utility holding and operating companies, the dissipation of assets of operating companies by their unregulated affiliates, [and] the failure of public utility rates to follow the fall of commodity prices during [the] years of economic distress [all of which] cast a shadow of ill-feeling upon the entire industry * * *." Rooks and Booth, Current Problems of Public Utility Rate Regulation, 13 Or.L.Rev. 122, 122 (1934); see also Claire, Recent Utility Regulation in Oregon, 11 Or.L.Rev. 338, 340 (1932) (discussing Governor Meier's platform with respect to utilities).
The sponsors of the constitutional amendment envisioned not only local control over energy resources, but also inexpensive production of energy. Voters' Pamphlet, November 4, 1930, p 51. What the sponsors envisioned is not always what the voters understood and intended, but in this case the publicity given PUDs with respect to the possibilities of local control and inexpensive production of energy, the overwhelming electoral support given PUDS, and the ill will directed at private utilities suggest that the voters intended these results in the creation of PUDs. The dual goals of local control and inexpensive production of energy could not be accomplished if PUDs had no choice but to duplicate existing hydroelectric facilities or to acquire such a facility at whatever price a utility demanded in contractual negotiations.
The strength of the voters' conviction that PUDs were a preferable alternative to private utilities is evidenced by two factors. First, they chose to enact a constitutional amendment rather than a statute by initiative to accomplish their purposes; although the same method is prescribed for each, the former may be amended or repealed only by popular vote. Or. Const., Art. IV, § 1, and Art. XVIII, § 1. Second, their votes in the November 1930 gubernatorial election confirm their resolve with respect to public power in that they sought public servants who would dutifully carry out their constitutional mandate, for "as election day neared, candidates for every important office stumbled over each other proclaiming their faith in public development of water power." Ogden, The Development of Federal Power Policy in the Pacific Northwest 96 (1949) (unpublished University of Chicago dissertation), quoted in Emerald's Petition for Review at 6. Julius Meier ran as an independent candidate for governor solely on a platform of reform of utility regulation. He soundly defeated the "regular" Republican and Democratic candidates. Claire, supra, 11 Or.L.Rev. at 339-40. The Nation, 96-7 (January 28, 1931) stated:
"In the November election Meier received more than twice as many votes as the `regular' Republican nominee, and thousands more than * * * all other candidates combined, notwithstanding the desperate [sic] fight waged against him by the power concerns and allied utilities. * * *
"Majorities in both houses of the legislature either were elected on the same program or have subsequently pledged themselves to support it, while the same *555 wave of protest against the private power interests carried Major General Charles H. Martin, retired, * * * into Congress from the overwhelmingly Republican district which includes Portland. The main plank of his platform was publicly owned hydroelectric power. * * *
"* * *
"* * * Mr. Meier has just issued a public announcement to the effect that if the legislature attempts to mar the program in any single detail, he will go over their heads by calling a special election and placing the proposed legislation in its entirety directly before the people. That he will do just exactly that is not doubted by anyone who really knows him * * *."
Article XI, section 12, of the Oregon Constitution, as adopted by initiative in November 1930, authorized the creation of PUDs "for the development of water power and/or electricity * * * and sale of water, water power and electric energy" and it provided in part that PUDs shall have the power:
"(e) To exercise the power of eminent domain.
"(f) To acquire and hold real property and other property necessary to or incident to the business of such districts.
"(g) To acquire, develop, and/or otherwise provide for a supply of water, water power and electric energy."
The last paragraph of Article XI, section 12, directed the legislature to provide implementing legislation. It provides:
"The legislative assembly shall and the people may provide any legislation, that may be necessary, in addition to existing laws, to carry out the provisions of this section."
The legislature met in January 1931 and promptly passed two separate but related bills. Oregon Laws 1931, chapter 279, now ORS chapter 261, implemented Article XI, section 12. The other, Oregon Laws 1931, chapter 67, now ORS chapter 543, created a comprehensive program regulating the use of any lake, stream or river "in connection with the development of any water-power project for the generation of electricity." Or. Laws 1931, ch. 67, §§ 2-3. This chapter contained the favorable takeover provisions of the statute at issue here, ORS 543.610, discussed below.
The passage of Article XI, section 12, gave the legislature a mandate from the people to enact legislation permitting PUDs to condemn property. We will consider chapters 279 and 67 (now ORS chapters 261 and 543) together, for together they reveal that PUDs could condemn the property of existing private utilities under ORS chapter 261, but not take over existing private utility property under ORS chapter 543.
The implementing legislation (now found in ORS chapter 261) provided for the establishment and operation of peoples' utility districts, an entity theretofore not existent in Oregon, "to distribute, sell and/or otherwise dispose of water, water power and electric energy, within or without the [districts'] territory." Or. Laws 1931, ch. 279, §§ 1, 2, 29(d). This legislation was prepared by members of the Oregon State Grange. See 41 Op.Att'y.Gen. 335, 344 (Or. 1981), citing Oregon Journal, pp 1, 16, January 12, 1931 (inaugural address of Governor Meier). It was signed by Governor Meier on March 6, 1931. Included in that legislation was section 29(d) and (e), codified as amended at ORS 261.305(4) and (5). It gave PUDs this authority:
"(d) To acquire and hold real and other property necessary or incident to the business of such districts, within or without * * * the district; to acquire, develop, and/or otherwise provide for * * * water power, and electric energy; to distribute, sell and/or otherwise dispose of water, water power and electric energy * * *.
"(e) To exercise the power of eminent domain for the purpose of acquiring any property within or without the district, necessary for carrying out the provisions of this act. * * *"
The policy of ORS chapter 261 includes:
"* * * authorization for the establishment of people's utility districts to develop the water and energy resources of this state for the benefit of the people of *556 this state and to supply public utility service, including water, water power and electric energy for all uses and users." ORS 261.007.
In reviewing the powers given the new PUDs, the Court of Appeals rejected Emerald's claim that Oregon Laws 1931, chapter 279, granted PUDs authority to condemn a private utility's hydroelectric facility already devoted to public use, stating:
"The statutory authority is to condemn any property necessary for carrying out the provisions of the chapter, which is consistent with the authority to exercise the power of eminent domain. However, it is less broad than the constitutional authority to acquire (as distinguished from condemn) property `necessary or incident to' the PUD's business. It is at best questionable whether the taking of an existing private utility's hydroelectric project already devoted to public use is necessary to carry out the provisions of the chapter, although it may be convenient or incident to carrying them out and although such facilities may be acquired by voluntary purchase. Given the rule that the power to condemn land already appropriated to public use must be in express terms, Little Nestucca Road Co. v. Tillamook Co., 31 Or 1, 48 P2d 465 (1897), we are not persuaded, without more, that ORS 261.305(5), either expressly or by necessary implication, grants PUDs authority to condemn existing hydroelectric facilities of private utilities." 76 Or. App. at 587, 711 P.2d 179 (emphasis in original).
We disagree. The public mandate that generated the constitutional amendment and chapter 279 itself indicate that the legislature intended Oregon Laws 1931, chapter 279, section 29(e), codified as amended at ORS 261.305(5), to include PUD authority to condemn existing hydroelectric facilities of private utilities.
As quoted earlier, Oregon Laws 1931, chapter 279, section 29(d), granted PUDS the "power * * * [t]o acquire * * * real and other property necessary or incident to the business of such districts, [and] * * * to acquire, develop, and/or otherwise provide for * * * water power and electric energy." We read the next paragraph of section 29 to allow eminent domain as one method by which this acquisition power of PUDs can be exercised. Section 29(e) grants PUDs authority "[t]o exercise the power of eminent domain for the purpose of acquiring any property * * * necessary for carrying out the provisions of this act." Paragraphs 29(d) and 29(e) should be read together.
When this is done, section 29 not only "clearly grants [PUDs] authority to acquire existing hydroelectric facilities, and electricity from them, by contract," 41 Op. Att'y.Gen. at 337, but also clearly grants PUDs the authority to acquire existing hydroelectric facilities by eminent domain. The mandate of the people and the warning of Governor Meier warranted no less. The 1931 legislature responded to the constitutional mandate. It enacted ORS chapter 261 which gives PUDs the necessary tools to "develop the water and energy resources of this state for the benefit of the people of this state and to supply public utility service, including water, water power and electric energy for all uses and users." ORS 261.007. See also Brown, supra, 20 Or.L.Rev. at 49 (discussing PUD power to condemn existing utilities).
Any lingering doubt is dispelled by reference to section 51 of chapter 279, codified as amended at ORS 261.030. It provided:
"Nothing herein contained shall authorize or be deemed to authorize or empower the board of directors of any district to interfere with or exercise any control over any existing utility owned and operated by any municipality in said district unless by consent of the city council of such municipality or the governing body of such municipally owned plant, when the control of said municipally owned plant is vested in a governing body other than the city council or governing body of such municipality."
That the legislature prohibited PUDs from condemning any "existing utility owned and operated by any municipality [without the] consent of the * * * governing body" strongly implies the authority to condemn the property of existing private utilities.
*557 The holding of Little Nestucca Road Co. v. Tillamook Co., 31 Or. 1, 48 P. 465 (1897), is not inconsistent with our conclusion. That case involved an attempt by Tillamook County to condemn an existing toll road under the authority of statutes providing the method for laying out a county road and assessing damages for the owners of the affected private property. The statutes made no reference to land already devoted to public use. The court stated:
"The right of eminent domain is a dominant legislative power only called into exercise by the enactment of a valid statute, and when a party asserts a right to seize land already appropriated to public use, he must sustain his claim by producing a statute clearly conferring the asserted authority." Id. at 5, 48 P. 465.
Little Nestucca recognized a general rule that when an entity with the delegated power of condemnation seeks to exercise such power with respect to property already devoted to public use, the delegated power must be stated "in express terms or must arise from necessary implication." Id. at 6, 48 P. 465 (emphasis added); see also 1 Nichols, Eminent Domain 2-55 to 2-69, §§ 2.2 to 2.2[1] (3d ed rev 1985). In the present case, considering the specific nature of the 1930 constitutional amendments and the events of 1930 and 1931 described earlier, and the provisions of chapter 279, including section 51 quoted above, the power of PUDs to condemn existing hydroelectric facilities already producing power for public consumption arises by necessary implication. Any other construction would be contrary to the goals and purposes that the voters and the legislature sought to achieve by authorizing the creation of PUDs.
The Court of Appeals conclusion to the contrary was erroneous. Emerald, however, claims the right to take over the PP & L facility under the favorable provisions of section 21 of chapter 67, now ORS chapter 543. The result reached by the Court of Appeals must still be affirmed if that court's view of Emerald's authority under ORS chapter 543 is correct.
Oregon Laws 1931, chapter 67, as noted earlier, was originally introduced at the behest of Governor Meier and was considered with the bill prepared by the Oregon State Grange. The bills thereafter went to the same legislative committees and were enacted at about the same time. Senate and House Journals 1931, pp. 434, 444, 543, 548. The governor's bill, Oregon Laws 1931, chapter 67, focused on the regulation of the development of the state's water resources and created the Hydroelectric Commission to preserve the state's water resources and to license their development. See ORS 543.015 (policy of chapter 543). Section 37 of that chapter, currently codified as amended at ORS 543.150, exempted the state, municipalities and PUDs from its provisions, but also reserved to some of these entities the "rights and preferences" of sections 9, 10 and 21 of chapter 67. Section 21 of that chapter, ORS 543.610, reserved to the "state and municipalities thereof" a right to the beneficial pricing scheme of that section in the takeover of an existing hydroelectric facility.[2]
The Court of Appeals held that a PUD is not a "municipality" under ORS 543.610 and thus could not receive the benefit of the pricing scheme of ORS 543.610. We agree.
*558 We initially note that the terms "municipality" and "municipalities" have no fixed meanings and that their meanings depend upon the context in which they are used.[3] In Wasco County Peoples' Utility District v. Kelly, 171 Or. 691, 698, 137 P.2d 295 (1943), we stated that PUDs were municipalities within the meaning of former Article IV, section 1a, of the Oregon Constitution. There the term was used in a broad and comprehensive sense. However, in the present case, ORS 543.610 was passed in 1931 as part of a complete statutory package concerning PUDs, legislation in which the terms "municipality" and "people's utility district" were expressly distinguished. The court in Wasco County did not consider ORS chapter 543.
Chapter 279 of Oregon Laws 1931, now ORS chapter 261, is replete with sections that clearly discriminate between municipalities and PUDs. The legislature defined a PUD as "an incorporated people's utility district" and a municipality as "an incorporated city or town with a council or legislative body." Or. Laws 1931, ch. 279, § 2, codified at ORS 261.010. The latter definition of a municipality clearly excludes PUDs.
Section 12 began:
"Whenever the voters of a municipality or the governing body of such municipality and the voters of a parcel of territory desire to unite to form a utility district under the provisions of this act * * *."
Section 13 provided in part:
"Whenever the voters of two or more municipalities, or the governing bodies thereof, wish to unite to form a utility district * * *."
Section 14 stated:
"In the formation of two or more municipalities into a utility district * * *."
Section 16 began:
"Any municipality not included in a utility district * * *."
Section 51, codified as amended at ORS 261.030, provided:
"Nothing herein contained shall authorize or be deemed to authorize or empower the board of directors of any district to interfere with or exercise any control over any existing utility owned and operated by any municipality in said district unless by consent of the city council of such municipality or the governing body of such municipally owned plant, when the control of said municipally owned plant is vested in a governing body other than the city council or governing body of such municipality."
Section 52, codified as amended at ORS 261.035, provided:
"Nothing in this act shall be so construed as to modify in any manner any charter provisions of any incorporated city or town, or to prohibit any municipality from acquiring and operating its own plant."
Because chapters 67 and 279 were enacted as part of a legislative package, we *559 ascribe to the legislature an intention to use the term "municipality" consistently in these related statutes. Thus we ascribe to the legislature, in its 1931 legislative package concerning PUDs, an intention not only to exclude PUDs from the definition of the term "municipality" under Oregon Laws 1931, chapter 279, but also to make the same exclusion under Oregon Laws 1931, chapter 67, section 21, presently codified at ORS 543.610.
ORS chapter 543 regulates hydroelectric power projects. The first phrase of ORS 543.150[4] (originally Oregon Laws 1931, chapter 67, section 37) states that the restrictions imposed by some of these statutes (such as prohibitions on constructing hydroelectric facilities and requirements of the licensing process) do not apply to "cities, towns or other municipal corporations of the state, including utility districts * * *." ORS 543.150 also retains certain rights and preferences of those same statutes (licensing, water use and condemnation preference) for "said cities, towns and other municipal corporations." Emerald contends that this language "clearly manifests an intention to include PUDs within the ambit of the term `municipal corporation' in the operative provisions of the Act."
The Court of Appeals held that ORS 543.150 was not determinative of whether a PUD is entitled to the benefit of ORS 543.610(1). 76 Or. App. at 594, 711 P.2d 179. It reasoned that the first phrase of ORS 543.150 is an exclusion from the application of the chapter, not a grant of authority, and its second phrase saves to the enumerated entities certain rights and preferences under various sections, but "does not say that all of the entities have rights and preferences under each of those sections." Id.
The express language used by the 1931 legislature corresponds to the Court of Appeals' analysis. The 1931 legislature patterned chapter 67 after the Federal Power Act. 16 U.S.C. §§ 791a-825r. However, the legislature did not blindly adopt verbatim language from the Federal Power Act. It chose carefully to distinguish among the entities enumerated in section 37 (now ORS 543.150) in terms of the rights and preferences granted such entities.
The legislature departed from the language of the federal act when it chose to do so. The change is most clearly illustrated when the comparable "preference clauses" of the two enactments are compared. Section 7 of the Federal Power Act, 16 U.S.C. § 800(a), granted a preference to "states and municipalities" in the issuance of licenses. The parallel preference clause in chapter 67 was found in section 9, now ORS 543.260. As introduced, that section gave a preference in license issuance to any "municipal corporation." That section was amended by the Senate to add the phrase "or public utility district."[5] It is significant that the legislature acted affirmatively to amend the preference clause in section 9 by adding a reference to "public utility district," and it did not amend section 21 (now ORS 543.610) to add "public utility district."
Finally, we note that subsection (2) of ORS 543.610 expressly reserves "to the state, and any municipality thereof, the right to take over all or any part of any project by condemnation proceedings as may be provided by the laws of Oregon or the charter of any such municipality." (Emphasis added.) The emphasized clause of subsection (2) fortifies the conclusion that in using the term "municipality" in section (1), the legislature likely had in mind cities and towns, entities that derive their powers from city charters. PUDs do not. Their powers are derived from the constitution and from the statutes.
*560 The 1931 legislature clearly had PUDs in mind. It included them when it chose to (in sections 37 and 9, now ORS 543.150 and 543.260). The omission in section 21 (now ORS 543.610) was intentional. We are bound to follow that intent.
"Ordinarily, when the legislature includes an express provision in one statute but omits such a provision in another statute, it may be inferred that such an omission was deliberate." Oregon Business Planning Council v. LCDC, 290 Or. 741, 749, 626 P.2d 350 (1981). It is not our role to do what the legislature, for whatever reason, has not seen fit to do. Plaintiff's claim that PUDs should be included within the coverage of ORS 543.610 should be directed to the legislature, not this court.[6]
The trial court and the Court of Appeals held that Emerald could not take defendant's existing facility under ORS 543.610. Those decisions were correct. Therefore, the trial court and the Court of Appeals are affirmed.
NOTES
[1] ORS 543.610(1) has since been amended and now provides for this measure of damage:

"payment of just compensation, including such reasonable damages, if any, to valuable, serviceable and dependent property of the holder of the license, not taken over as may be caused by the severance therefrom of the property taken * * *."
All references in the text to ORS 543.610 are to ORS 543.610 (1981), unless otherwise stated.
[2] ORS 543.610 (1981) provided:

"(1) Upon not less than two years' notice in writing the state, or any municipality thereof, shall have the right at any time to take over and thereafter to maintain and operate any project constructed under a license pursuant to ORS 543.010 to 543.620, upon payment of the fair value of the property taken over, not exceeding the net investment as defined in subsection (2) of ORS 543.010, plus such reasonable damages, if any, to valuable, serviceable and dependent property of the holder of the license, not taken over, as may be caused by the severance therefrom of the property taken, and shall assume all contracts entered into by the licensee which are required to have and do have the express approval of the commission. The net investment shall be determined in accordance with the provisions of ORS 543.010 to 543.620. If the sum to be paid cannot be agreed upon by the holder of the license and the municipality or the state, as the case may be, it shall be determined in a proceeding in equity instituted by the state or municipality, as the case may be, in the circuit court of the county in which the major part of the project is located.
"(2) There is also expressly reserved to the state, and any municipality thereof, the right to take over all or any part of any project by condemnation proceedings as may be provided by the laws of Oregon or the charter of any such municipality." (Emphasis added.)
[3] Compare Eckles v. Woolley, 302 Or. 37, 40-42, 726 P.2d 918 (1986) (reviewing the Oregon Constitution's diverse use of the word "corporation" in Article XI as well as the constitution's use of the phrases "municipal corporations" and "corporations" for "municipal purposes").

The Oregon Revised Statutes also use these terms to refer to different units of local governments. See, e.g., ORS 440.320(1) (health service districts referred to as "municipal corporations"); ORS 451.410(2) (county service districts referred to as "municipal corporations"); ORS 266.010(3), 266.110(1) (park and recreation districts referred to as both "districts" and "municipal corporations," respectively); ORS 267.200 and 268.300 (metropolitan service districts referred to as both "municipal corporations" and "public bod[ies] corporate and politic, exercising public power"); ORS 197.175, 221.710, 221.901 and 261.010(2) (cities referred to as "cities," "incorporated cities," "municipal corporation[s]" and "municipalit[ies]," respectively), cited in Local Government § 1.7 (Or CLE 1982 & Supp 1986).
[4] ORS 543.150 provides:

"The provisions of ORS 543.010 to 543.620 shall not apply to cities, towns or other municipal corporations of this state, including utility districts organized under section 12, Article XI, Oregon Constitution, and legislation enacted thereunder; saving, however, to such cities, towns and other municipal corporations the rights and preferences specified in ORS 543.260, 543.270 and 543.610. * * *"
[5] We note that the correct term is "people's utility district." The 1983 legislature amended ORS 543.260(3) to make this correction. Or. Laws 1983, ch. 740, § 214b(3).
[6] We note that the Attorney General, on February 13, 1981, issued an opinion stating that Emerald could not take over defendant's existing hydroelectric facility under ORS 543.610. 41 Op Att'y Gen 335 (Or 1981). The legislature has not since amended ORS 543.610 to include PUDs.

The Attorney General's opinion contains an excellent discussion of the political events preceding and following the enactment of what are now ORS chapters 261 and 543. See 41 Op Att'y Gen at 342-46.