Argued and submitted July 8, 1987, complaint dismissed January 20, 1988

In re Complaint as to the Conduct of

# GREGORY L. METTLER,
*Accused.*

(OSB 86-17; SC S33657)

748 P2d 1010

Robert J. McGaughey, Portland, filed the petition and reply brief, and argued the cause for the accused.

Susan D. Isaacs, Assistant General Counsel, argued the cause for the Oregon State Bar.

Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Jerome Lidz, Assistant Attorney General, Salem, filed a brief of *amicus curiae* for the Department of Justice.

Before Peterson, Chief Justice, and Lent, Linde, Campbell, Carson and Gillette, Justices.

PER CURIAM

## PER CURIAM

In this disciplinary proceeding, the accused is charged with professional misconduct resulting from his communications with one Anderson during the employment of the accused as a securities examiner for the State of Oregon.[1] The accused seeks review of the Trial Panel's conclusion that he violated DR 7-104(A)(1) and (2).[2] We conclude that, in the circumstances of this case, a lawyer acting as a securities examiner is not representing a client. Therefore, we find that the accused did not violate either provision of DR 7-104(A).

The following facts substantially are not in dispute. The accused is a lawyer[3] and a member of the Oregon State Bar,[4] employed as a securities examiner. While some securities examiners are lawyers, there is no requirement that securities examiners be lawyers and a number of them are not.

As part of his employment, the accused investigated Anderson, a licensed securities salesman. Thereafter, on June 28, 1985, the Corporation Division issued a cease and desist order against Anderson, revoking his license and imposing a

---

[1] The accused's employment was in the Securities Section of the Corporation Division of the Department of Commerce.

[2] DR 7-104, at the time of the alleged misconduct, provided:

"Communicating With One Represented by Counsel.

"(A)  During the course of his representation of a client a lawyer shall not:

"(1)  Communicate or cause another to communicate on the subject of the representation, or on directly related subjects, with a person he knows to be represented by a lawyer on that subject, or directly related subjects, unless he has the prior consent of the lawyer representing such other person, or is authorized by law to do so.

"(2)  Give advice to a person who is not represented by a lawyer, other than the advice to secure counsel, if the interests of such person are or have a reasonable possibility of being in conflict with the interests of his client."

DR 7-104(A)(1) was amended, effective June 1, 1986, by the addition of the sentence: "This prohibition includes a lawyer representing the lawyer's own interests."

[3] Because the Disciplinary Rules are couched in terms of the duties of a "lawyer," we shall refer to a member of the Oregon State Bar as a "lawyer," even though the applicable statutes refer to "attorney."

[4] Since 1935, Oregon has had an integrated Bar. In order to practice law in this state, one must be admitted to practice by the Supreme Court of the State of Oregon and be an active member of the Oregon State Bar. ORS 9.250, 9.160.

fine of $7,500. The order was to be stayed if Anderson requested a hearing. He did make such a request. In August, the accused scheduled a hearing date for Anderson and sent him the required notice and "Bill of Rights."[5]

The actions of the Corporation Division resulted from, among other things, Anderson's dealings with one Furukawa. Furukawa sued Anderson as a consequence of their dealings. Anderson then retained a lawyer to defend him in Furukawa's civil action. On September 5, 1985, the accused learned of the civil action and that Anderson was represented by a lawyer in that action. On September 6, the accused telephoned Anderson to inquire whether Anderson would be represented at the hearing. Anderson stated that he had not decided. The two agreed to meet at the accused's office on September 10 to attempt to work out the problem without a hearing.

At the September 10 meeting, the accused informed Anderson that Anderson had the right to counsel. Anderson informed him that he had retained counsel in the civil case. The accused and Anderson discussed a stipulation that included admissions by Anderson and an agreement that the fine would not be levied but that the revocation of the license would stand. On September 11, Anderson returned to the office of the accused and signed the stipulation. The admissions contained in the stipulation would have been extremely damaging to Anderson's position in the civil case and Furukawa's lawyer was prepared to use the stipulation. Anderson's lawyer later was able to persuade the Corporation Division to withdraw the stipulation.

The accused first is charged with violating DR 7-104(A)(1), which prohibits direct communications by a lawyer, in the representation of a client, with a person represented by another lawyer. The accused also is charged with giving advice to a person who is not represented by a lawyer in violation of DR 7-104(A)(2).

■ The two rule violations of which the accused is charged commence with the introductory phrase: "During the course of his [now, "the lawyer's"] representation of a client a

---

[5] The "Bill of Rights" is a legislatively-mandated listing of a citizen's rights and remedies in hearings before state agencies. ORS 183.413.

lawyer shall not." Whatever may be the subsequent conduct of the lawyer, the conditions contained in this phrase act as a threshold requirement for unethical conduct.[6]

There are three operative parts to this introductory phrase: "lawyer," "course of representation," and "client."

1. Lawyer. The accused is (and was) a lawyer admitted to practice before this court and an active member of the Bar. As such, the accused is subject to the Disciplinary Rules. This is so, even though he was serving in government, because government lawyers are as subject to the rules as their counterparts in private and corporate practice and activities. *See In re Burrows*, 291 Or 135, 144, 629 P2d 820 (1981); OSB Ethics Opinion No. 119 (January 25, 1963).

2. Course of representation. In an agency sense, there can be no doubt that the accused was representing the Corporation Division during the targeted communications. Because of the circumstances of this case, it is not necessary here to determine if a narrower interpretation of "course of representation" is required in the application of this rule.

3. Client. The accused maintains that the Corporation Division was not his client, either when he communicated with Anderson on September 6, 10, and 11, or otherwise. In part, the accused relies on the fact that he was not employed as a lawyer but as a securities examiner, a position which does not require the employee to be a lawyer. The issue of whether a lawyer, employed by an agency of state government in a position which does not require the employee to be a lawyer, has the state as a client has not, to our knowledge, been addressed by any court.

Before pursuing the meaning of the word "client," we point out that the operative requirement that the lawyer be in the process of "representing a client," as a condition precedent to violation of the Disciplinary Rule, was not always so. Prior to the adoption of the Code of Professional Responsibility by this court in December of 1970, the Rules of Professional Conduct prohibited a lawyer from communicating with a party represented by counsel upon a subject of controversy

---

[6] In a case involving DR 7-102 and a similar predicate, this court said: "The phrase *'representation of a client'* is a condition precedent to the operative subdivisions of the rule." *In re Brown*, 298 Or 285, 294, 692 P2d 107 (1984).

without regard to the lawyer's representation of a client. Rules of Professional Conduct, Rule 11 (1935). The addition of the client requirement substantially narrowed the reach of this Disciplinary Rule.

The narrowness of the rule was recognized by the Bar and this court by the 1986 addition to DR 7-104(A)(1) of the words: "This prohibition includes a lawyer representing the lawyer's own interests."[7] Now, a lawyer may violate this rule when the lawyer represents a client's interest or the lawyer's own interest.

■ What then, for purposes of DR 7-104, is a *client?* The Disciplinary Rules are of little help. The rules do not define the word. Neither does the State Bar Act (ORS 9.005 to 9.665) shed light on our inquiry, although one statute purports to define "attorney." ORS 9.310.[8] The Oregon Evidence Code, in the section on lawyer-client privileges (OEC 503), provides the following definition of a client for use in that section:

> " 'Client' means a person, public officer, corporation, association or other organization or entity, either public or private, who is rendered professional legal services by a lawyer, or who consults a lawyer with a view to obtaining professional legal services from the lawyer." ORS 40.225(1)(a).[9]

---

[7] Two earlier disciplinary cases, *In re Huffman,* 289 Or 515, 614 P2d 586 (1980) and *In re Hopp,* 291 Or 697, 634 P2d 238 (1981), in construing similar "representation of a client" predicate language found in DR 7-102, concluded that the lawyers had violated the Disciplinary Rule even though no client was involved. In both cases, it was clear that the lawyers were representing their own respective personal interests. Even if we were to extend similar reasoning to DR 7-104 (before amendment), there is insufficient evidence to find, by clear and convincing evidence, that the accused was representing his own personal interests in this case.

[8] ORS 9.310 provides:

"An attorney is a person authorized to represent a party in the written proceedings in any action, suit or proceeding, in any stage thereof. An attorney, other than the one who represents the party in the written proceedings, may also represent a party in court, or before a judicial officer, in which case the attorney is known as counsel, and the authority of the attorney is limited to the matters that transpire in the court or before such officer at the time."

[9] The unofficial legislative commentary to the Oregon Rules of Evidence contains the following:

"*Subsection (1).* Paragraph (a). The definition of 'client' includes governmental bodies and corporations—issues on which existing Oregon law is silent. The definition also extends the status of client to one consulting a lawyer with a view to retaining the lawyer, even though actual employment does not result. McCormick, *Evidence* section 88 (2d ed 1972); *McNamee v. First National Bank,* 88 Or 636, 172 P 801 (1918). The client need not be involved in litigation; the

Collateral references are unilluminating. For instance, the Rules of Client Security Fund adopted by the Board of Governors of the Bar provide (in Section 1.4) that " '[c]lient' includes individuals, partnerships, corporations, or any other entity having an established attorney-client relationship with a lawyer."

Our caselaw is of some help. In a different context (privileged communications), this court said in *Sitton v. Peyree, et al.,* 117 Or 107, 115, 241 P 62, 242 P 1112 (1926) (citing Weeks, Attorneys at Law, § 143): "The term 'client,' as used in a statute, should be understood in its most enlarged sense." Relying on Black's Law Dictionary (4th Edition 1951), we stated that "[a] client is a person who employes [*sic*] or retains an attorney to advise, assist or act for him or her in any legal business." *In re O'Byrne,* 298 Or 535, 544, 694 P2d 955 (1985). In the same case, looking to Ballentine's Law Dictionary (3rd Edition 1969), we said: "A client is a person who applies to a lawyer for advice and direction on a question of law." *Id.* Also, in that case we referred to Webster's Third New International Dictionary (1971): "A client is a person who consults or engages the services of a legal advisor." *Id.*

■ A formal agreement to pay a fee is not a prerequisite to the relationship. *Sitton v. Peyree, supra.* Also, the client-lawyer relationship can be inferred from the conduct of the parties. *In re Robertson,* 290 Or 639, 648, 624 P2d 603 (1981).

The accused contends that the existence of a lawyer-client relationship should be judged by a subjective standard and that neither he nor the state considered the accused to be acting as the lawyer of the State of Oregon or its agency. The facts are less clear than the accused would have it. First, the accused, in the process of the securities case, prepared and filed an affidavit in which he stated that he was "an attorney, admitted to practice law in the State of Oregon," was "currently employed by the State of Oregon, Corporation Division, Securities Section," and "[i]n that capacity * * * participated

---

rendition of legal service or advice under any circumstances suffices. 8 Wigmore, *Evidence* section 2294 (McNaughton rev 1961); *Bryant v. Dukehart,* 106 Or 359, 210 P 454 (1922). The services must be professional legal services. Purely business or personal matters do not qualify. McCormick section 88; *Sitton v. Peyree,* 117 Or 107, 241 P 62, 242 P 1112 (1926); *Booher v. Brown,* 173 Or 464, 146 P2d 71 (1944)." *Quoted in* Kirkpatrick, Oregon Evidence 141 (1982).

in an investigation of * * * Anderson." Secondly, the job description for the accused's position as a securities examiner requires him to conduct investigations, interview persons, conduct or participate in administrative proceedings, issue comments and opinions on security issues, perform legal research and respond to inquiries regarding corporate and administrative law.[10] One does not need to be a lawyer to perform these tasks, but they are tasks which a lawyer might perform in the representation of a client.

On the other side of the coin, the Attorney General and the Corporation Commissioner steadfastly deny that the accused at any time was acting as the state's lawyer. However, the record discloses that, for certain circumstances, the Attorney General had agreed with the Corporation Commissioner that examiners who were lawyers could represent the state in hearings. Had this case gone to a hearing and the accused represented the state, neither the accused nor the state would be in a position to argue that the accused was not acting as the state's lawyer.[11] See Frohnmayer v. SAIF, 294 Or 570, 660 P2d 1061 (1983).

After a careful and thoughtful review of the evidence, the Trial Panel unanimously reached the conclusion that the accused "was acting 'during the course of his representation of a client.' " On the same evidence, we come to the opposite conclusion.

---

[10] The position description lists the purpose of the position of securities examiner as:

"Participates in investigations and examinations of persons and entities within the agency's jurisdiction. Reviews and processes registrations and licensee applications relating to the Oregon Securities Law."

The document also listed the major duties as:

"Conducts investigations; examines, audits and reviews books and records; interviews persons; gathers facts pertinent to investigations; conducts and/or participates in administrative proceedings.

"Cross-trained to evaluate, analyze and process security offerings and licensee applications; issues comments and opinions regarding security issues to applicants or their legal counsel.

"Performs legal research; responds to questions and inquiries regarding corporate and administrative law.

"Responds to telephone and written inquiries from the general public, attorneys; provides assistance to the state and federal agencies."

[11] 1987 legislative changes would now permit non-lawyers to represent certain agencies in hearings upon consent of the Attorney General. Or Laws 1987, ch 833, § 1.

■■ Even if outward appearances give rise to the conclusion that the accused was representing a client, it is unlikely that a lawyer-client relationship will exist when neither the lawyer nor the "client" intend such relationship.[12] If the accused and representatives of the state are to be believed (and there is no evidence to the contrary), the accused was not acting for a client at the time of the communications herein. In the circumstances of this case, we find no lawyer-client relationship.

Lest we be misunderstood, we do not condone the actions of the accused in this case. At the time of the actions reviewed herein, the Corporation Division had rules prohibiting all securities examiners, both lawyers and non-lawyers, from direct communication with persons who were represented by a lawyer in the administrative proceeding. As a result of this case, the Corporation Commissioner has expanded the rule to prevent a recurrence of a similar situation. But bad practice does not necessarily equate to an ethical violation.

We find the accused not guilty of violating DR 7-104(A)(1).

Because the second alleged violation (DR 7-104(A)(2)) is predicated upon the identical condition precedent of representation of a client, we find the accused not guilty of that charge as well.

Accused found not guilty of professional misconduct. Complaint dismissed.

---

[12] We are aware that, in some circumstances, a lawyer and another may be estopped, on agency principles, from claiming that a lawyer-client relationship did not exist in fact. *See, e.g., Lehman v. Knott,* 100 Or 240, 246, 187 P 1109 (1920). This is not such a circumstance.