Argued and submitted August 31, accused is reprimanded November 18, 1993

In re Complaint as to the Conduct of
## DARRELL DUANE SMITH,
*Accused.*

(OSB 91-83; SC S39663)

861 P2d 1013

Darrell D. Smith, Springfield, argued the cause and filed the briefs *in propria persona*.

Jeffrey D. Sapiro, Disciplinary Counsel, Lake Oswego, argued the cause for the Oregon State Bar. Lia Saroyan, Assistant Disciplinary Counsel, filed the brief.

PER CURIAM

## PER CURIAM

In this lawyer disciplinary proceeding, the accused is charged with violating DR 7-104(A)(1)[1] by communicating with a person whom the accused knew to be represented by a lawyer (here, the president of a corporation), during the course of litigation between that corporation and the accused. The accused seeks review of the trial panel's conclusion that he, as an inactive member of the Oregon State Bar who was representing himself, is subject to the Code of Professional Responsibility and to Supreme Court disciplinary jurisdiction. The accused also seeks review of the trial panel's finding that the accused violated DR 7-104(A)(1).

We conclude that an inactive member of the Bar representing himself or herself is subject to the Code of Professional Responsibility and to the disciplinary jurisdiction of this court. On *de novo* review, ORS 9.536(3), we find that the accused violated DR 7-104(A)(1) and reprimand the accused.

The material facts are not in dispute. The accused was admitted to practice law in Oregon in 1972. At his request, the accused became an inactive member of the Bar in January 1989. In June 1989, the accused filed an action in the District Court for Lane County against a firm named Custom Micro, Inc. (Custom Micro), asserting claims resulting from his purchase of personal computer equipment from Custom Micro.[2] Custom Micro was represented by a lawyer throughout the proceeding,

---

[1] In February 1991, at the time of the conduct giving rise to this proceeding, DR 7-104 provided, in part:

"(A) During the course of the lawyer's representation of a client, a lawyer shall not:

"(1) Communicate or cause another to communicate on the subject of the representation, or on directly related subjects, with a person the lawyer knows to be represented by a lawyer on that subject, or on directly related subjects, unless the lawyer has the prior consent of the lawyer representing such other person or is authorized by law to do so. This prohibition includes a lawyer representing the lawyer's own interests."

DR 7-104(A)(1) was amended in December 1991 to allow communication with a represented person if a written agreement requires that a written notice or a demand be sent to the represented person, so long as a copy of the notice or demand is sent to the represented person's lawyer.

[2] The accused represented himself in that litigation pursuant to ORS 9.320, which provides, in part: "Any action, suit, or proceeding may be prosecuted or defended by a party in person."

and the accused was aware of the lawyer's representation of Custom Micro. The accused lost the case in the trial court and appealed.

In February 1991, while awaiting the outcome of the appeal, the accused wrote a letter to the President of Custom Micro, urging him to settle the matter. The accused also sent a copy of that letter to Custom Micro's lawyer. The letter said, in part, "I sense you are being directed by an attorney motivated more by an eye to his own financial gain than any reasonable or realistic appraisal of his chances of ultimately prevailing." The letter also said that "you don't have a ghost of a chance of prevailing." The accused ended the letter with the statement, "I am prepared to continue with this farce as long as you are willing to finance [your lawyer]."

■ As a result of writing the letter to Custom Micro, the accused was charged with communicating with a person whom the accused knew to be represented by a lawyer about the subject of the representation. DR 7-104(A)(1). The accused contends that the Bar and this court do not have jurisdiction to discipline him and that the rules of professional conduct did not apply to him because, as an inactive member of the Bar at the time that he sent the letter, he was ineligible to practice law.

The accused argues that the term "member," as used in ORS 9.527 and 9.490, which are central to the first issue in this case, refers to only an *active* member of the Bar. We disagree. ORS 9.490 makes the rules of professional responsibility binding upon members of the Bar,[3] and ORS 9.527 gives this court the authority to discipline Bar members.[4] In interpreting those statutes, it is this court's task to ascertain what the legislature intended by its use of the word "member." *PGE v. Bureau of Labor and Industries*, 317 Or

---

[3] ORS 9.490 provides:

"The board of governors, with the approval of the state bar given at any regular or special meeting, shall formulate rules of professional conduct, and when such rules are adopted by the Supreme Court, shall have power to enforce the same. Such rules shall be binding upon all members of the bar."

[4] ORS 9.527(7) provides, in part: "The Supreme Court may disbar, suspend or reprimand a member of the bar whenever * * * it appears to the court that * * * [t]he member has violated any of the provisions of the rules of professional conduct."

606, 610, 859 P2d 1143 (1993) (citations omitted) ("In interpreting a statute, the court's task is to discern the intent of the legislature.").

In *PGE*, this court held that it would first consider the text and context of a statute in determining legislative intent. 317 Or at 611. "If the legislature's intent is clear from the [inquiry into text and context], further inquiry is unnecessary." *Id*. As discussed below, this is a case where the text and context of the statutes at issue, informed by rules of construction that bear on how to interpret the provisions in context, make clear the legislature's intent and no further inquiry is necessary. The text and context of ORS 9.490 and 9.527 show that the legislature intended the term "member" to include all members of the Bar, active and inactive.

ORS 9.180 creates two classifications of members of the Bar, active members and inactive members. ORS 9.180 provides:

> "All persons admitted to practice law in this state thereby shall become active members of the bar. Every member shall be an active member unless, at the member's request, or for reasons prescribed by statute, the rules of the Supreme Court, or the rules of procedure, the member is enrolled as an inactive member. An inactive member may, on compliance with the rules of the Supreme Court and the rules of procedure and payment of all required fees, again become an active member. Inactive members shall not hold office or vote, but they shall have such other privileges as the board may provide."

Throughout ORS chapter 9, the legislature expressly distinguishes between active and inactive members of the Bar where necessary. *See* ORS 9.160 (only active members may practice law); ORS 9.191(3) (Board of Governors may consider active or inactive status in setting membership fees); ORS 9.200(1) and (2) (all members who are delinquent in paying membership fees may be suspended; active members who are delinquent in paying fees may not vote); ORS 9.210 (two members of Board of Bar Examiners must not be either active or inactive members). By contrast, ORS 9.490 and 9.527 refer simply to "member" or "members."

" 'Ordinarily, when the legislature includes an express provision in one statute but omits such a provision in

another statute, it may be inferred that such an omission was deliberate.' " *Emerald PUD v. PP&L*, 302 Or 256, 269, 729 P2d 552 (1986) (quoting *Oregon Business Planning Council v. LCDC*, 290 Or 741, 749, 626 P2d 350 (1981)) (holding that, if the legislature intended to include charters of municipalities in hydroelectric facility takeover statute, it would have done so expressly as it had on other occasions). In ORS chapter 9, the legislature has made clear when it intends to distinguish between active and inactive members of the Bar; it made no such distinction in ORS 9.527 or 9.490. Those statutes apply to all members of the Bar, active and inactive.

Further, ORS 9.261(1) concerns the resignation of lawyers from the Bar. It provides, in part:

> "An attorney may resign from membership in the bar * * *. After acceptance of the resignation by the Supreme Court, the attorney shall not be entitled to the rights *nor subject to the disabilities or prohibitions incident to membership*, except that the attorney is still subject to the power of the court in respect to matters arising prior to the resignation." (Emphasis added.)

ORS 9.261(1) establishes that the Code of Professional Responsibility and other rules of conduct do not apply to the conduct of a lawyer after the lawyer resigns from the Bar. ORS 9.180 makes no similar statement in respect of inactive members of the Bar. The legislature could have exempted inactive members from the "disabilities or prohibitions incident to membership," but it did not. The accused chose to remain a member of the Bar, albeit inactive. With the benefits of membership come the obligations of the Code of Professional Responsibility.

The same proposition is supported by precedent. This court has held that a member of the Bar who has been suspended for violating a disciplinary rule — and who is, therefore, ineligible to practice law — nonetheless is subject to the disciplinary rules and to the disciplinary jurisdiction of the Bar and of this court during the period of suspension. *In re Hereford*, 306 Or 69, 74, 756 P2d 30 (1988). In that case, Hereford was disciplined for, among other things, not cooperating with a Bar investigation after his initial suspension. *Id*. This court held that the disciplinary rule at issue was "applicable to the accused even as to those events occurring after

suspension." *Id.* We conclude that the accused's status as an inactive lawyer is analogous to that of a lawyer who temporarily is suspended from practice. As with a suspended lawyer, an inactive member of the Bar is subject to the disciplinary rules and to the jurisdiction of the Bar and this court.

■     This calculus is not altered by the fact that the accused was representing himself pursuant to ORS 9.320. Although DR 7-104(A)(1) begins with the proviso, "[d]uring the course of the lawyer's representation of a client," it expressly provides that the prohibition on communication with a person represented by counsel "includes a lawyer representing the lawyer's own interests." The accused does not dispute that he was representing his own interests in the litigation against Custom Micro. Once it is resolved that the disciplinary rules apply to inactive members, DR 7-104(A)(1), on its face, applies to lawyers who are representing themselves.[5]

■ ■     The accused communicated with Custom Micro, which he knew was represented by a lawyer, about the matter for which Custom Micro was represented. We find by clear and convincing evidence that the accused violated DR 7-104(A)(1).[6] The only issue remaining is the sanction.

---

[5] The accused cites *In re Mettler*, 305 Or 12, 748 P2d 1010 (1988), and *In re Brown*, 298 Or 285, 692 P2d 107 (1984), presumably for the proposition that DR 7-104(A)(1) should not apply to a lawyer representing himself or herself in a proceeding. Those cases are not helpful in the disposition of this case. *In re Mettler* involved a situation in which the lawyer represented neither himself nor a client. 305 Or at 17, 20. This court found that Mettler was not representing his own interests, and it pursued its analysis on that basis. *Id.* at 17 n 7.

Neither does *In re Brown* help the accused. The court read the phrase "representation of a client" in DR 7-102 to exclude a lawyer representing his or her own interests. 298 Or at 294-95. However, *In re Brown* no longer is useful in interpreting DR 7-102. *See In re Glass*, 309 Or 218, 223, 784 P2d 1094 (1990) (holding that, under DR 7-102, "representation of a client" included a lawyer representing his own interests). In addition, DR 7-102 was amended effective January 1991, to add the phrase, "or in representing the lawyer's own interests." At the time the accused wrote the letter at issue, both DR 7-102 and DR 7-104 expressly applied to the conduct of a lawyer representing the lawyer's own interests.

[6] The trial panel found:

"It is clear that the letter directed to the defendant [in the underlying dispute] was sent at a time when the accused was fully aware that the defendant was represented by [a lawyer]. This is a direct violation of the disciplinary rule, if it applies to lawyers on in active [sic] status."

The accused reminds this court that he sent a copy of the letter to Custom Micro's lawyer. A lawyer, however, may not avoid responsibility under DR

■ In determining the appropriate sanction for a violation of the Code of Professional Responsibility, this court uses for guidance the American Bar Association's Standards for Imposing Lawyer Sanctions (1986) (ABA Standards). *In re Busby*, 317 Or 213, 217, 855 P2d 156 (1993). Under the ABA Standards, there are four factors to be considered in imposing sanctions: "(a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." ABA Standard 3.0.

We have considered the ABA Standards and conclude that the trial panel appropriately reprimanded the accused. In addition, it is consonant with precedent to reprimand a lawyer who communicated with a person whom the lawyer knew to be represented. *See, e.g., In re McCaffrey*, 275 Or 23, 28, 549 P2d 666 (1976) (reprimand for violation of DR 7-104 (A)(1)); *In re Peter A. Schwabe, Sr.*, 242 Or 169, 175-76, 408 P2d 922 (1965) (reprimand for violation of predecessor to DR 7-104(A)(1)); *In re Eugene C. Venn*, 235 Or 73, 74, 383 P2d 774 (1963) (same).[7]

The accused is reprimanded.

---

7-104(A)(1) by sending a copy of the impermissible communication to the represented person's lawyer. *In re Hedrick*, 312 Or 442, 449, 822 P2d 1187 (1991). As this court held in *Hedrick*: "A lawyer is not permitted to ignore the plain words of the rule and then escape responsibility * * * because counsel for the party receiving the communication was alerted that it had been made." *Id*.

[7] This court imposed a 60-day suspension in *In re Lewelling*, 296 Or 702, 678 P2d 1229 (1984), because the accused communicated with a person whom he knew to be represented, and he threatened to bring criminal charges in order to gain an advantage in a civil matter. *Id*. at 707. This court qualified that sanction, however, by saying that, in the circumstances of that case, "[c]ommunicating with a person the lawyer knows to be represented does not involve dishonesty or a breach of trust and if that were the only charge here we would impose only a public reprimand." *Id*.