### In re Jeffrey T. SMITH, Esq.

[739 A.2d 1191]

No. 99-169

July 21, 1999. Pursuant to the recommendation of the Professional Conduct Board filed April 8, 1999, and approval thereof, it is hereby ordered that Jeffrey T. Smith, Esq. be publicly reprimanded for the reasons set forth in the Board's report attached hereto for publication as part of the order of this Court. A.O. 9, Rule 8E.

Attorney Smith shall also be placed on probation for 6 months with the conditions set forth in the attached report. The period of probation shall begin on August 1, 1999.

### REPORT TO THE SUPREME COURT
#### Facts

Respondent has been a member of the Vermont bar for over 25 years. He is a solo practitioner in the town of Brandon.

In 1995, respondent represented one Clifton Alexander, who was married to Margaret Alexander. The Alexanders had a sometimes difficult relationship, which often had issues relevant to an imbalance of power between them. One source of discord was Mrs. Alexander's money which was held in a trust established by Margaret Alexander to protect her assets. The trustee was her nephew, Richard Dubois.

Mr. Alexander brought an involuntary guardianship petition against his wife in 1995. Respondent was appointed to represent him on a pro bono basis.

Mrs. Alexander was represented by Carolyn Tonelli, Esq. who had represented Mrs. Alexander since at least 1992. Her response to the petition was that while Mrs. Alexander was frail, had a poor memory, and was susceptible to her husband's pressures, she was legally competent. On behalf of Mr. Alexander, respondent withdrew the guardianship petition in March of 1995.

Less than six months later, Mr. Alexander told respondent that he and his wife had been to the banks in Randolph in an attempt to get information about Mrs. Alexander's assets. They were denied the information and told they would have to obtain that information from the trustee, Mr. Dubois. Mr. Alexander felt that Mr. Dubois was not cooperative with his requests for information.

At Mr. Alexander's request, respondent prepared a document for Mrs. Alexander's signature whereby she revoked the trust and any power of attorney that Mr. Dubois or anyone else may have held. At the time he did this, respondent was aware of DR 7-104(A), the disciplinary rule prohibiting him from direct contact with an adverse party who was represented by counsel. Respondent felt that the rule did not apply because the couple seemed to be compatible. Further, Mr. Alexander told him that Attorney Tonelli was no longer Mrs. Alexander's counsel. This was not true.

Mrs. Alexander signed the document in respondent's office on August 18, 1995, although respondent was not personally present.

Respondent also prepared for Mrs. Alexander's signature a power of attorney, which by its terms gave Mr. Alexander complete control over Mrs. Alexander's assets. It is a general power of attorney which states that it "shall not be affected by disability or death of the principal(s)."

In preparing this document, respondent was mindful of his client's claim that he needed assets from the trust not for his own benefit, but for the benefit of his wife, and that the trustee was not providing his wife with sufficient funds. Respondent was concerned as to whether Mrs. Alexander was competent to sign a new power of attorney.

On August 25, 1995, respondent met with Mrs. Alexander and explained to her that the purpose of the power of attorney was to allow her husband to obtain information from the bank. He also told her that the power of attorney allowed her husband to do only what she directed him to do. This, by the very terms of the document, was not true, although respondent seemed to have believed that the power of attorney was so limited. Respondent appeared to the Board to misapprehend the effect of the document he had prepared. In any event, respondent concluded that Mrs. Alexander seemed to know what she was doing. He witnessed her signature.

Attorney Tonelli learned of these documents. She notified respondent that she was still counsel of record and that her client had signed them only due to undue pressure by her husband. Attorney Tonelli notified all relevant parties that the documents signed by Mrs. Alexander without benefit of independent counsel were null and void. No actual injury resulted to Mrs. Alexander.

### Conclusions of Law

Respondent clearly violated DR 7-104(A).* Respondent knew that Mrs. Alexander had retained independent counsel to assist her in resisting her husband's attempt to have her declared incompetent in March of 1995. When Mr. Alexander sought respondent's assistance only five months later in obtaining Mrs. Alexander's power of attorney over her assets, respondent had the duty to contact Attorney Tonelli and request permission to contact her client. It was insufficient to rely upon his own client's claim that Attorney Tonelli had been discharged, a claim which proved to be untrue. It was insufficient to rely upon his client's claim that they were no longer in an adverse relationship vis-á-vis Mrs. Alexander's assets, a claim which also proved to be untrue.

Even if we were to assume that respondent was correct in his belief that Mrs. Alexander was not represented by counsel, he would have violated the Code of Professional Responsibility by advising Mrs. Alexander as to the meaning of the power of attorney which he prepared for her to sign. DR 7-104(A)(2) provides that an attorney shall not "[g]ive advice to a person who is not represented by a lawyer, other than the advice to secure counsel, if the interests of such person are or have a reasonable possibility of being in conflict with the interests of his client." Obviously, Mr. Alexander's interest in obtaining access to Mrs. Alexander's assets conflicted with Mrs. Alexander's desire to protect those assets as evidenced by her

---

*DR 7-104(A) states: "During the course of his representation of a client a lawyer shall not: (1) Communicate or cause another to communicate on the subject matter of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so."

having placed those assets in trust. It is particularly distressing that the advice which respondent proffered to Mrs. Alexander, i.e., that the general power of attorney was really a limited power of attorney, was erroneous.

## Sanction

It is obvious to every member of the Board that respondent is a well-meaning and gracious person who acted without malice or any bad intent. It is also clear to the Board, however, that respondent fails to appreciate the seriousness of the misconduct. But for Attorney Tonelli's intervention, it is quite possible that Mrs. Alexander could have suffered a significant monetary loss. It is also quite clear that respondent does not understand the broad scope of the power of attorney which he drafted for Mrs. Alexander.

Despite the parties' joint recommendation that a private admonition be imposed here, we are guided by our actions in many prior cases of improper contact as well as by the ABA Standards for Imposition of Lawyer Discipline in recommending a public sanction here.

This was not an isolated instance of improper contact which arose by accident or chance meeting. See, e.g., Decision No. 23, PCB Docket No. 91.38 (December 6, 1991) (private admonition imposed on lawyer who accompanied her client to pick up the client's children and became involved in a discussion with the represented ex-spouse). To the contrary, respondent deliberately planned this contact with the represented party not once, but twice.

While respondent did not intend to violate the disciplinary rule, he was certainly negligent in failing to determine Attorney Tonelli's status in light of his knowledge that she had represented Mrs. Alexander only five months earlier. Even if Mrs. Alexander had told respondent that she had discharged Attorney Tonelli, it would have been prudent to check

directly with opposing counsel. But to simply rely upon the claim of his client that the adverse party was no longer represented, particularly given this couple's history, was reckless. A mere negligent contact in such circumstances warrants public reprimand. See *In re McCaffrey*, 549 P.2d 666 (Or. 1976) (attorney who knew adverse party in domestic relations matter was represented six months earlier was publicly reprimanded for direct contact, even though the attorney did not know the adverse party was still represented), cited with approval in *In re Illuzzi*, 160 Vt. 474, 490, 632 A.2d 346, 354 (1993).

We are guided by *In re Illuzzi* in concluding that Standard 6.33 of the ABA Standards for Imposition of Lawyer Discipline controls this case. That Standard provides:

> Reprimand is generally appropriate when a lawyer is negligent in determining whether it is proper to engage in communication with an individual in the legal system, and causes injury or potential injury to a party or interference or potential interference with the outcome of the legal proceeding.

In aggravation, we note that respondent has substantial experience in the practice of law and that the victim of this misconduct, Mrs. Alexander, was vulnerable. In mitigation, we note an absence of a dishonest or selfish motive and a full and free disclosure to the disciplinary board. These factors do not tilt the balance away from our recommendation that a public reprimand be imposed.

In order to protect the public and insure that respondent receives sufficient training in the areas of ethics and the substantive law pertinent to trusts and powers of attorney, we also recommend that respondent be placed on probation for a period of six months. During this probationary period, respondent should

be required to complete five hours of continuing legal education in ethics, particularly in the area of conflicts, and another five hours of continuing legal education in the area of trusts and estates. Respondent should be required to report his progress to bar counsel for monitoring purposes.

### In re J.T.S.